SAMUEL NISSENBERG & another *vs.* JULES FELLEMAN
& another.

Worcester.   September 22, 1959. — November 9, 1959.

Present: WILKINS, C.J., RONAN, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Exoneration.   Guaranty.   Surety.   Conflict of Laws.   Equity Jurisdiction,*
    Exoneration.   *Equity Pleading and Practice,* Suit for exoneration, De-
    claratory proceeding, Amendment, Conditional relief.

The law of New York in the circumstances governed the substantive
    rights and obligations among themselves of coguarantors who gave
    a guaranty providing that it, "all acts and transactions [t]hereunder,
    and the rights and obligations of the parties [t]hereto" should be
    governed by that law.   [719–720]
Discussion of New York and other authorities dealing with the right of a
    surety or guarantor to contribution from or exoneration by his cosure-
    ties or coguarantors.   [720–723]
The equitable remedies and procedures available to a guarantor to en-
    force the substantive obligation of his coguarantors to him arising
    under the law of New York were to be determined by the law of Massa-
    chusetts in a suit in equity here by him against the coguarantors.
    [723]
One of several guarantors immediately liable under a guaranty of pay-
    ment of money, instead of being required first to pay the whole or more
    than that guarantor's fair share of the principal obligation and then to
    seek contribution from his coguarantors, might in equity, without
    having made such payment, be given relief against the coguarantors,
    suitably conditioned, by exoneration looking to simultaneous payment
    by each of the guarantors of his fair share of the principal obligation.
    [723–725]
Upon appeal by the plaintiff in a suit in equity following a decree sustain-
    ing a demurrer to the bill with leave to amend and a final decree dis-
    missing the bill, where this court determined that the bill did not
    adequately state a case for the relief by exoneration sought by the
    plaintiff, one of several guarantors under a guaranty, against the de-
    fendants, his coguarantors, but in the circumstances thought that the
    plaintiff should be allowed further opportunity to amend the bill,
    the decree sustaining the demurrer was affirmed and the final decree
    was reversed and the suit remanded with directions to allow the plain-
    tiff a certain time to move to amend.   [726]

BILL IN EQUITY, filed in the Superior Court with a writ of
summons and attachment dated November 7, 1958.

Following a decree by *Quirico*, J., sustaining a demurrer to the bill with leave to amend, a final decree dismissing the bill was entered by *Meagher*, J. The plaintiffs appealed.

*Harry Zarrow*, for the plaintiffs.

*Richard A. Kaye*, for the defendants.

CUTTER, J. The plaintiffs and the defendants, all residents of Massachusetts, were stockholders, officers, and directors of Furniture & Toy Company, Inc. (Furniture), a Massachusetts corporation, which had made with Whitehall Mercantile Corporation (the factor), a New York corporation, an agreement (the agreement) dated June 19, 1956, to provide for securing certain loans. A written guaranty agreement (the guaranty), also dated June 19, 1956, was executed by each plaintiff and each defendant. By this instrument, the signers jointly and severally guaranteed "the due payment and performance by" Furniture "of all moneys to be paid . . . pursuant to . . . [the] agreement." Each instrument provided that the law of New York was to be applicable to it.[1]

The foregoing facts were alleged, or incorporated by reference, in the plaintiffs' bill in equity to which were attached copies of the agreement and the guaranty. The bill also states (a) that the factor had brought suit against the plaintiffs in a Massachusetts court, the factor in that action alleging that Furniture had failed to pay the factor $8,968.29 and "that the plaintiffs therefore owe . . . [that] sum to . . . [the factor] together with reasonable attorneys' fees"; (b) that the plaintiffs' property has been attached; (c) that the defendants as coguarantors with the plaintiffs "owe a duty of contribution to the plaintiffs"; (d) that if "the plaintiffs are required to pay the obligation before enforcing any right of contribution . . . it will cause [them] hardship and financial distress"; and (e) that in equity the de-

---

[1] The agreement provided that "this agreement and all transactions, assignments and transfers hereunder, and all rights of the parties, shall be governed as to validity, construction, enforcement, and in all other respects by the laws of . . . New York." The guaranty provided: "This guaranty, all acts and transactions hereunder, and the rights and obligations of the parties hereto, shall be governed, construed and interpreted according to the laws of . . . New York."

fendants should "make contribution of their share of the obligation before payment thereof by the plaintiffs." The bill seeks (1) a decree that the defendants "are jointly and severally liable for one half of the obligation which the plaintiffs . . . may be required to pay" and (2) an order that the defendants pay to the factor one half of any judgment which the factor may recover against the plaintiffs. There is a prayer for general relief.

The defendants demurred on the ground that no basis for relief had been stated in the bill and that there was an adequate remedy at law. The demurrer was sustained with leave to the plaintiffs to amend their bill. A final decree dismissing the bill was entered. The plaintiffs have appealed.

1. The agreement (executed on the same day as the guaranty) provided that it was not to "become effective until accepted by . . . [the factor] at its office in New York." New York thus appears to have been the place (see *Milliken* v. *Pratt*, 125 Mass. 374, 376; see also *Clark* v. *State St. Trust Co.* 270 Mass. 140, 150) where both instruments were made. In any event, since New York is the place where, as the agreement states, "the transactions hereunder will take place," effect should be given, in determining the substantive rights created by the instruments, to the reasonable stipulations of the parties (see footnote 1, *supra*) that New York law is to be applicable. See *Mittenthal* v. *Mascagni*, 183 Mass. 19, 21–22; *Clark* v. *State St. Trust Co.* 270 Mass. 140, 150; *Maxwell Shapiro Woolen Co. Inc.* v. *Amerotron Corp.*, *ante*, 252, 257. See also *Samincorp So. Am. Minerals & Merchandise Corp.* v. *Lewis*, 337 Mass. 298, 301; 2 Rabel, Conflict of Laws, 357–429; 3 *ibid.*, 344–368.

Any claim to contribution among the coguarantors is not based directly upon the instrument by which the coguarantors are bound to the creditor, but rests upon an implied obligation, equitable in character, growing out of the relationship of cosurety or coguarantor. See *Weeks* v. *Parsons*, 176 Mass. 570, 575–577; *Quintin* v. *Magnant*, 285 Mass. 450, 451–452; *Aspinwall* v. *Sacchi*, 57 N. Y. 331, 335–336; *Wells* v. *Miller*, 66 N. Y. 255, 258; *Deering* v.

*Earl of Winchelsea*, 2 B. & P. 270, 273; Restatement: Restitution, § 81, and Seavey and Scott notes.   See also *Moriarty v. King*, 317 Mass. 210, 216–217.   The execution and delivery of the guaranty gave rise to such a coguaranty relationship.   That circumstance leads us to determine the extent of the equitable obligation in accordance with the law which governs the guaranty, at least in a case where the parties have stipulated the applicable law in the guaranty itself in such broad language.[2]

.2. New York applies the general rule (Restatement: Security, § 149; see § 82, comment g) that a surety or guarantor who discharges more than his proportionate share of the principal's obligation is entitled to contribution from a cosurety.   *Aspinwall* v. *Sacchi*, 57 N. Y. 331, 335–338. See *Wells* v. *Miller*, 66 N. Y. 255, 258.   The right to contribution from coguarantors arises in New York when a coguarantor who is "legally liable upon his guaranty" has "paid the claim" of the creditor.   "Then, and not until such payment, has he the right to exact contributions." *Hard* v. *Mingle*, 206 N. Y. 179, 184, relying largely upon *Wood* v. *Leland*, 1 Met. 387, 388–389, and citing *Seabury* v. *Sibley*, 183 Mass. 105, 107.   See *Quintin* v. *Magnant*, 285 Mass. 450, 451–452;   Restatement:   Restitution,   § 82; Pomeroy, Equity Jurisprudence (5th ed.) §§ 411, 1417–1418. In *Empire Trust Co.* v. *Bartley & Co. Inc.* 258 App. Div. (N. Y.) 249, 251–252, where comparable statements were made, it was pointed out that, if contribution were to be required from one cosurety in favor of another before the latter had paid more than his proportionate share of the debt, the creditor might still be able to recover the whole debt from the contributing cosurety except as by payment to the creditor the principal debt had been reduced.   Contribution was not enforced before payment by the cosurety

---

[2] As to the varying views about the law governing implied obligations, see *American Union Bank* v. *Swiss Bank Corp.* 40 F. 2d 446, 450 (2d Cir.);   Restatement:   Conflict of Laws, §§ 452–453;   Beale, Conflict of Laws, § 452.1; Dicey, Conflict of Laws (6th ed.) 754–757;   3 Rabel, Conflict of Laws, 361–382;   Stumberg, Conflict of Laws (2d ed.) 245.   Cf. *Wilson & Co. Inc.* v. *Douredoure*, 154 F. 2d 442, 444 (3d Cir.).

seeking contribution. No New York case has come to our attention in which a surety or guarantor, in advance of payment of more than his share of the principal obligation, has been granted equitable relief by way of exoneration against a cosurety or coguarantor in the form of an order that the latter pay his share of the obligation to the creditor.

In Restatement: Security, § 156, it is said that "[w]here sureties are under a duty of immediate performance to a creditor, a surety has a right of exoneration against the cosureties who have consented to his becoming a surety, to the same extent that upon performance he would be entitled to contribution." With § 156 must also be read Restatement: Security, §§ 112, 144–147, 149–150; Restitution, §§ 76, 81, 82. The rule set out in § 156 of the Restatement has frequently been stated. See e.g. Brandt, Suretyship and Guaranty (3d ed.) § 301; Williston, Contracts (Rev. ed.) § 1275 (but see § 1278); Corbin, Contracts, § 931, notes 76–77, § 1150; Simpson, Suretyship, §§ 46, 49; Arant, Suretyship and Guaranty, §§ 74, 75; Stearns, Suretyship (5th ed.) §§ 11.18, 11.25–11.31 esp. 11.26, where it said, "Although it is the general rule that a surety must first make payment of the principal's debt before he can call upon his co-sureties for contribution, in certain situations equity gives a surety the right to call upon his co-sureties for exoneration before any payment is made. For example, if one of several co-obligors is called upon to pay the entire debt, a compliance with this demand might cause financial disaster to him, which his right of contribution after payment would not prevent." See also Chafee and Simpson, Cases on Equity, 326n; Ames, Cases on Suretyship, 597, 598nn; 50 Am. Jur., Suretyship, § 301. The principal decision cited by most of the authors (see Restatement: Security, Tentative Draft No. 4, April 4, 1940, § 148, and notes, pp. 229–230) is *Wolmershausen* v. *Gullick*, [1893] 2 Ch. 514, 528–529. There a plaintiff, a surety's executrix, was given declaratory relief as to her right to enforce contribution from a cosurety, and conditional relief by which

"upon the [p]laintiff paying her own share, the [d]efendant
. . . [was] to indemnify her against further payment or
liability, and . . . [was] by payment to her or to the princi-
pal creditor or otherwise, to exonerate the [p]laintiff from
liability beyond the extent of her own share." The court
intimated that, if the creditor had been made a party, the
cosurety would have been directed to make immediate pay-
ment to the creditor of the cosurety's share. The amount
of the claim had been established against the surety's estate
of which the then plaintiff was executrix.

In effect, under the fair and sensible rule of the *Wolmers-
hausen* case, (a) a court may decree specific performance of
a matured joint principal obligation simultaneously by all
the cosureties, who are bound equally to that joint obliga-
tion, and (b) that specific performance may be fairly con-
ditioned upon performance by the plaintiff of his share of
the joint obligation. The plaintiff thus is not put to the
expense and risk of paying the whole joint obligation and
seeking reimbursement, possibly at some hardship in financ-
ing the payment and because of the costs, inconvenience,
and hazards of litigation. Instead, a court of equity enables
him to pay, when it is due, no more than his own share of
the joint principal obligation and the attendant expenses,
at the same time forcing the others equally liable to pay
their fair share, which eventually they could be required,
at law or in equity, to reimburse to the plaintiff (once he has
paid more than his share) by way of equitable contribution.

The *Wolmershausen* case was approved in *Malone* v.
*Stewart*, 235 Pa. 99, 103, and followed in *Reeder* v. *Union
Trust Co.* 26 Pa. Dist. 833, 836–838. See *Shepheard* v. *Bray*,
[1906] 2 Ch. 235, 240, 253; *In re Fenton*, (1930) 99 L. J.
Ch. (N. S.) 358, 361; *A Debtor* v. *Trustee of the Property of
Waite*, [1956] 2 All E. R. 94, 99; *Hyde* v. *Tracy*, 2 Day
(Conn.) 491, 493–495; *Morrison* v. *Poyntz*, 7 Dana (Ky.)
307, 32 Am. Dec. 92, 93; *Ferrer* v. *Barrett*, 57 N. C. 455,
456–458; *McKenna* v. *George*, 2 Rich. Eq. (S. C.) 15, 20,
22. See also *Moore* v. *Topliff*, 107 Ill. 241, 248–251; *Keach*
v. *Hamilton*, 84 Ill. App. 413, 415–416; *Vian* v. *Hilberg*,

111 Neb. 232, 250 (where, however, the court relied in part on *McBride* v. *Potter-Lovell Co.* 169 Mass. 7, 8–9, a case in which the plaintiffs had apparently satisfied more than their shares of the principal obligation). Cf. situation in *Evans, Coleman & Evans, Ltd.* v. *Pistorino*, 245 Mass. 94, 100, where reference is made to the *Wolmershausen* case.

In view of the language of the *Empire Trust* case, 258 App. Div. (N. Y.) 249, *supra*, there may be doubt whether a New York court, even upon proper allegations and with proper joinder of parties, would grant conditional relief by way of equitable exoneration to the plaintiffs against their coguarantors in advance of payment by the plaintiffs of more than their proportionate share of Furniture's debt to the factor. In the New York cases already cited, the possibility of properly conditioned equitable exoneration of a surety by his cosureties was not discussed, and it is possible that, when the question is raised in New York, the *Wolmershausen* case will be followed. *Hayes* v. *Ward*, 4 Johns. (N. Y.) 123, 134–135, however, relied on by the plaintiffs as supporting such exoneration, does not remove the doubts created by the *Empire Trust* case.

3. Once the substantive obligations of the parties are determined under New York law (*Lundblad* v. *New Amsterdam Cas. Co.* 265 Mass. 158, 161–162; *Klefbeck* v. *Dous*, 302 Mass. 383, 384), the extent to which those obligations can be protected under available Massachusetts equitable remedies and procedures is to be determined by the Massachusetts forum by Massachusetts law. *Sleeper* v. *Stetson*, 280 Mass. 248, 251–252. See *U. S. B. & M. Liquidation Corp.* v. *Hilton*, 307 Mass. 114, 116–117; Restatement: Conflict of Laws, §§ 584–587, 607–608; Beale, Conflict of Laws, §§ 584.1–584.2, 607.1–608.1; Goodrich, Conflict of Laws (3d ed.) 226 et seq.; Stumberg, Conflict of Laws (2d ed.) 134 et seq. No Massachusetts decision directly applies the principles of Restatement: Security, § 156. Exoneration, however, has been granted in other contexts, is clearly within usual Massachusetts equity jurisdiction, see G. L. c. 214, § 1 (as amended through St. 1935, c. 407, § 2), and

§ 3 (2), and is possible under Massachusetts equity procedure. See *Browne* v. *Bixby*, 190 Mass. 69, 70 (surety's exoneration by principal debtor's estate); *Fitcher* v. *Griffiths*, 216 Mass. 174, 176–177 (exoneration of land subject to a mortgage securing another's debt); *Schneider* v. *Armour & Co.* 323 Mass. 28, 29–30 (exoneration of guarantors by principal debtors). See also *Rhoades* v. *Secunda*, 296 Mass. 1, 2–3; *Killoren* v. *Hernan*, 303 Mass. 93, 96–100; *Sokol* v. *Nathanson*, 317 Mass. 325, 327. Cf. *Pappone* v. *Masters*, 325 Mass. 437, 438–439. Cf. also *Administrator of O. P. A.* v. *Chook*, 320 Mass. 187, 190–193. Certainly, the plaintiffs, upon suitable allegations and joinder of all necessary parties, would be entitled at least to declaratory relief against the defendants and other necessary or appropriate parties, stating their substantive rights. See G. L. c. 231A, §§ 1, 5, 6, 8, 9. We see no reason why, using Massachusetts equitable remedies (even if they are regarded as more ample and flexible than those of New York), the plaintiffs should not also have appropriate consequential relief, if the allegations of their bill, and their proof, justify it. The propriety of such relief as is contemplated by Restatement: Security, § 156, was at least suggested in *Quintin* v. *Magnant*, 285 Mass. 450, 452, where, in discussing contribution among coöbligors, it was said, "It is true that contribution may be enforced in an action of contract . . . . A bill in equity often affords more complete remedies," citing the *Wolmershausen* case, [1893] 2 Ch. 514, *supra*. The reasons of fairness and good sense, already mentioned above, for approving the rule in the *Wolmershausen* case, and that of § 156, make exoneration of cosureties and coguarantors as appropriate as in other situations where exoneration has been granted in Massachusetts. Such relief can be conditioned upon the plaintiffs' prompt payment of their proportionate share of Furniture's debt to the factor, as in the *Wolmershausen* case, for conditional equitable relief is no novelty. See *Jurewicz* v. *Jurewicz*, 317 Mass. 512, 517; *Kressler* v. *Flynn*, 323 Mass. 610, 612–613; Seavey and Scott notes to Restatement: Restitution, § 82, pp. 119–120.

The present case, of course, is not one where an action at law by the plaintiffs against the defendants to recover the latter's share of the principal debt would be available without prior payment of the principal debt by the plaintiffs. Cf. *Broadway Natl. Bank* v. *Hayward,* 285 Mass. 459, 465–466; *Pappone* v. *Masters,* 325 Mass. 437, 438. Because of the risks and hardship of such prior payment, the remedy at law may not be adequate if the facts show that all coguarantors should fairly be specifically required to perform simultaneously their equitable share of the obligations guaranteed by them jointly, rather than remitting two of the coguarantors to performance of the whole joint obligation with an attempted recovery over against the others of their shares. Such relief is justified where the facts alleged meet the standards set by Restatement: Security, § 156.

4. In a case of this character, it is open to the plaintiffs to seek merely consequential relief by way of exoneration. If they do so, they should allege that the plaintiffs and the defendants, as well as the principal debtor, are under a duty to the creditor of immediate performance (see Restatement: Security, § 112, comment d; § 156; see also Williston, Contracts [Rev. ed.] § 1275, p. 3640; Stearns, Suretyship [5th ed.] § 11.38), as, for example, by alleging that the creditor has recovered judgment against the plaintiffs or that the plaintiffs admit the obligation of the cosureties and assert that it exists as to all cosureties. In the alternative, the plaintiffs may seek a declaration of the existence and extent of the principal's and the cosureties' obligations, and then conditionally seek consequential relief by way of exoneration with respect to whatever obligations are determined to exist. Where such a determination by declaratory relief is sought (and perhaps even where it is not), questions, not argued and which we need not now discuss, may arise whether all necessary parties have been joined or, in the alternative, whether the failure to do so has been adequately explained, as, for example, by an allegation that the principal debtor is insolvent or unavailable. See Restatement: Security, § 164; Restitution, § 81, comments

h, i; § 82, comment a; § 85, comment h, and Seavey and Scott notes to these sections; Pomeroy, Equity Jurisprudence (5th ed.) § 1418. See also G. L. c. 231A, § 8; *Sadler* v. *Industrial Trust Co.* 327 Mass. 10, 13. To the extent that such a bill seeks declaratory relief (see G. L. c. 231A, § 1) it should allege the existence of a controversy and state with "clarity what the controversy" is. *Brown* v. *Neelon,* 335 Mass. 357, 361.

The present bill, judged by these principles, does not justify the relief sought. The interlocutory decree sustaining the demurrer was proper. Nevertheless, we think that the plaintiffs should be allowed further opportunity to amend.

5. The interlocutory decree is affirmed. The plaintiffs are to be given a further period of not less than thirty days from the date of the rescript within which they may file a motion to amend their bill. The final decree is reversed and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*