**Hugh GARDNER, Plaintiff and Respondent,**

v.

**David Duane BEAN and Betty Lou Bean, Defendants and Appellants.**

**No. 18624.**

Supreme Court of Utah.

Jan. 30, 1984.

Larry A. Kirkham, Salt Lake City, for defendants and appellants.

Paul N. Cotro-Manes, Salt Lake City, for plaintiff and respondent.

OAKS, Justice:

This is a case of first impression in this state on the right of contribution among co-guarantors of an installment debt. The court gave a judgment for contribution, and defendants appeal. We reverse because the judgment is premature on the facts of this case.

Plaintiff Gardner and defendants Bean [1] each owned 50 percent of the common stock of Firebrand, Inc. (dba Diamond Tire Center). In 1969, with the help of a guarantee from the Small Business Administration (SBA), Firebrand borrowed $150,000 from a Utah bank. Pursuant to SBA requirements, the Beans and Gardner signed separate guarantees of the loan, and Gardner mortgaged a parcel of real property as further security. Because of persistent losses in the business, David Duane Bean was forced out as president and manager of Firebrand in 1971. The Beans' stock was surrendered at that time, and the Beans have had nothing further to do with Firebrand. Although Firebrand was current on its monthly SBA loan payments in 1971, the business was in a precarious financial position.

Gardner managed Firebrand from 1971 to 1975. The loan went into arrears during this period, and the bank assigned it to the SBA. After the SBA called the loan in December 1976, it served notice of its intent to foreclose its mortgage on the property Gardner had given as security. To prevent foreclosure, Gardner negotiated a new arrangement with the SBA.

As of June 29, 1977, Howells Inc., a corporation whose relationship to the other parties does not appear in the record, formally assumed $110,000 of Firebrand's $111,000 debt to the SBA in exchange for a conveyance of Gardner's mortgaged property, then worth about $120,000 in excess of its mortgage debt. The SBA thereupon reduced the. monthly payment, extended the maturity of the loan to 1987, and released Gardner from his guarantee.[2] Thereafter, Howells Inc. made all of the monthly payments on the loan, until the balance due on the date of trial (May 5, 1982) was $57,013.57.

In May 1978, Gardner brought this suit against the Beans for "contribution" of one-half of the .$110,000 Gardner was "compelled to pay to the Small Business Administration as a satisfaction of the obligation" of Firebrand. After a bench trial, the district court gave Gardner judgment against the Beans for $55,000 plus $16,022.32 interest.[3] The judgment also provided that Gardner should indemnify the Beans if the SBA should collect any portion of the Firebrand loan from them under their guarantee.

The Beans make essentially one argument on appeal: Gardner is not entitled to contribution because his conveyance to Howells Inc. did not discharge Firebrand's debt (or the Beans' contingent obligation) to the SBA and therefore did not benefit the Beans in the manner required for contribution. Gardner does not challenge this characterization of the transaction.[4] Instead, Gardner argues that because Howells has now paid the SBA $53,000 (plus interest) in his behalf (reducing the balance to ˙$57,000), he is entitled to compel the

---

1. David Duane Bean and his wife, Betty Lou Bean, owned the stock and executed the subject guarantee jointly. For ease of reference, this opinion will refer to them jointly as the Beans.

2. The exact terms of this transaction are not before us. None of the 27 documentary exhibits received into evidence was designated for or included in the record on appeal. As a result, the statement of facts in this opinion is limited to the facts contained in the findings (which are not challenged by either party), with slight elaboration from uncontested testimony.

3. Judge G. Hal Taylor gave his ruling on the record and in a minute entry at the conclusion of the trial, but died before signing the formal findings and judgment. Judge Bryant H. Croft signed the findings and judgment pursuant to Utah R.Civ.P. 63(a). *Cf. Matter of Estate of Cassity*, Utah, 656 P.2d 1023 (1982).

4. Specifically, Gardner does not contend that the new arrangement constituted a novation or an accord and satisfaction by which Firebrand's obligation was paid (and its guarantors were discharged) in exchange for the substituted obligation of Howells.

Beans to contribute their 50 percent share of the balance owed to the SBA when Gardner conveyed his property to Howells in exchange for its promise to pay $110,000 (plus interest) to the SBA.

■ *Contribution* is the process by which one person obtains reimbursement from another for a proportionate share of an obligation paid by the first person but for which they are both liable. 18 Am. Jur.2d *Contribution* § 1 (1965). *Cf.* Utah R.Civ.P. 69(h) (procedure for enforcement of contribution when judgment obtained against multiple defendants but collected from one). "Contribution ... presumes the payment and extinguishment of the debt by one for the benefit of all." *Dillenbeck v. Dygert,* 97 N.Y. 303, 309 (1884).

There can be no doubt that Gardner would be entitled to 50 percent contribution from his co-guarantors if Gardner's 1977 arrangement had resulted in payment of the SBA loan, thus discharging the Beans' liability as guarantors. But Gardner did not make payment or conveyance to the SBA, and his arrangement did not extinguish the SBA loan. Gardner contracted with Howells to pay $110,000 of the SBA loan, and the reduction of the principal balance since that time has resulted solely from Howells' monthly payments in fulfillment of that commitment. As to the $57,000 balance owed to the SBA at the time of the trial, we must assume that the Beans remained liable on their guarantee. Both parties have assumed this in all their arguments to this Court, and the district court obviously assumed liability when it sought to protect the Beans by the indemnity provision in its judgment.

Can a co-guarantor who has paid $53,000 on an obligation of $111,000 obtain contribution from co-guarantors who remain liable on their guarantee of the balance?

■ It is well settled that a co-guarantor cannot bring an action or suit for contribution until he has paid more than his share of the guaranteed debt. *Richter v. Henningsan,* 110 Cal. 530, 537, 42 P. 1077, 1079 (1895) (cited in Pacific Reporter as *Richter*

*v. Blasingame* ); *Cipra v. Seeger,* 215 Kan. 951, 952, 529 P.2d 130, 133 (1974); 4 Pomeroy, *Equity Jurisprudence* § 1417 (5th ed. 1941); 18 Am.Jur.2d *Contribution* § 9 (1965). As noted in *Restatement of Security* § 149 comment a (1941):

> Since the right to contribution results from the benefit which one cosurety has received as the result of another co-surety's performance, the right to contribution depends upon performance by one of more than his proportionate share. He cannot obtain contribution in advance of his own performance, nor when he has performed no more than his proportionate share.

As to installment debts, this rule has been applied to forbid contribution when a co-guarantor has not paid more than his proportionate share of the entire obligation, including the portion not yet due. *Tucker v. Bennett,* [1927] 2 D.L.R. 42 (Ontario Sup.Ct.). Conversely, a plaintiff has a right to contribution when his installment payments have exceeded his proportionate share of the entire debt. *Durbin v. Kuney,* 19 Or. 71, 23 P. 661 (1890).

Gardner (through Howells Inc.) has paid less than half of the outstanding balance of the SBA loan. His judgment for contribution from the Beans is therefore premature and must be reversed.

Gardner relies on statements and authorities in Annot., 38 A.L.R.3d 680, 684 (1971), to the effect that a co-guarantor need not pay the entire debt, "but that before paying more than his own share" he may proceed in equity to compel his co-guarantors to *exonerate* him by paying their share of the debt directly to the creditor. These authorities would be in point if this were a suit for exoneration. It is not. The only relief prayed or given in this suit was a judgment for contribution. The distinction between contribution and exoneration does and should make a difference on the issue in this case.

■ *Exoneration* means the relief or removal of a burden, charge, or duty. 35 C.J.S. *Exoneration* p. 227 (1960). Exoneration is sometimes used in connection with reim-

bursement.[5] However, in the annotation cited by Gardner and in this opinion it refers to a form of equitable relief akin to specific performance of a duty to pay. In this usage, exoneration describes an order compelling an obligor to pay the obligation directly to the creditor (or authorizing payment out of a fund or other security committed to the obligation). Payment pursuant to such an order would exonerate a person who would otherwise be compelled to make payment and then take action against other obligors for reimbursement or contribution. *Stulz-Sickles Co. v. Fredburn Construction Corp.*, 114 N.J.Eq. 475, 477–78, 169 A. 27, 28–29 (1933); *Glades County v. Detroit Fidelity & Surety Co.*, 57 F.2d 449, 452 (5th Cir.1932); *American Casualty Co. v. Town of Shattuck*, 228 F.Supp. 834, 842 (W.D.Okl.1964).

Exoneration permits a guarantor to compel a principal to pay an entire obligation then due. *Restatement of Security* § 112 (1941). It can also be used by one guarantor against co-guarantors to compel them to pay their share of a guaranteed obligation then due "to the same extent that upon performance [the plaintiff co-guarantor] would be entitled to contribution." *Id.* at § 156.

Gardner's reliance on exoneration precedents is misplaced because on the facts of this case the remedy of exoneration involves different equities than the remedy of contribution. In exoneration, the debt would be discharged by the relief ordered, so no party would be compelled to assume either the burden of advancing funds on behalf of co-obligors or the risk of a co-obligor's insolvency during the period required to collect his share from him. Consequently, if one co-guarantor seeks exoneration from other co-guarantors, he need not show that he has previously paid his share of the joint obligation, although he should tender his ability to do so contemporaneously with the compelled performance of his joint obligors. Finally, exoneration avoids multiplicity of litigation since it adjusts the rights of the parties in one decree.

In contrast, if one co-guarantor could obtain a judgment for contribution without showing that he had paid more than his share of the debt, the plaintiff could obtain equitable relief to compel an inequitable result. If the plaintiff asked for contribution for the defendant co-guarantors' proportionate shares of the entire debt (as in this case), he would be going beyond the proper function of contribution to seek advancement rather than reimbursement. This would compel the defendant co-guarantors to assume such risks as the insolvency or defalcation of the plaintiff during the period between their payment to him and his payment in discharge of the debt. In the meantime, the co-guarantors would remain liable for the debt. If the plaintiff only asked for contribution for amounts he had already paid on the debt, this could involve multiplicity of litigation, as suggested by the prospect of separate suits for contribution as each installment was paid. In either case, such relief would violate the maxim that he who seeks equity should do equity.

The critical contrast between exoneration and contribution is noted in *Nissenberg v. Felleman*, 339 Mass. 717, 162 N.E.2d 304 (1959), a leading opinion that observes: " 'Although it is the general rule that a surety must first make payment of the principal's debt before he can call upon his co-sureties for *contribution*, in certain situations equity gives a surety the right to call upon his co-sureties for *exoneration* before any payment is made.' " *Id.* at 721,

---

5. Exoneration is sometimes used to describe the process by which a person who has paid an obligation obtains total reimbursement from the person who is *primarily* liable. *E.g., Fidelity & Cas. Ins. Co. v. Sears, Roebuck & Co.*, 124 Conn. 227, 231, 199 A. 93, 94 (1938); *Uptagrafft v. United States*, 315 F.2d 200, 203 (4th Cir.1963); *Maryland Cas. Co. v. Charleston Lead Works*, 24 F.2d 836, 839 (E.D.S.C.1928). This type of exoneration is like contribution in its judgment for "reimbursement," but dissimilar in its involving total reimbursement ("indemnity," as it is sometimes called) rather than merely the defendants' proportionate shares. *Cf.* Utah R.Civ.P. 69(h) (refers to procedure for compelling "reimbursement" from the principal as well as "contribution" from defendants who have paid less than their proportionate shares).

162 N.E.2d at 307–08 (emphasis added) (*quoting* Stearns, *Suretyship* § 11.26 (5th ed.). The opinion explains:

> [I]f contribution were to be required from one cosurety in favor of another before the latter had paid more than his proportionate share of the debt, the creditor might still be able to recover the whole debt from the contributing cosurety except as by payment to the creditor the principal debt had been reduced.

*Id.* at 720, 162 N.E.2d at 307.

The remedy of contribution is not available in the circumstances of this case. The judgment is therefore reversed, and the case is remanded for the entry of judgment for the defendants, without prejudice to plaintiff's reapplication for contribution, with interest, when the SBA loan has been fully paid or defendants are otherwise discharged from liability on their guarantee.[6] Costs to defendants.

HALL, C.J., and STEWART, HOWE and DURHAM, JJ., concur.

---

6. We are, of course, aware that the outcome of this case requires Gardner to assume the risk of the Beans' insolvency during the period prior to the time when he can properly require them to contribute. But so far as Gardner is concerned, that risk is self-imposed, since it is a consequence of the terms of the original transaction (in which he mortgaged his real estate) and the modified terms he renegotiated in 1977.