In re FLORES DE NEW MEXICO, INC.,
a Delaware corporation, Employer I.D.
No. 13–3324752 and State Tax ID No.
02–046825003, Debtor.

BANDA NEGRA INTERNATIONAL,
INC., Plaintiff,

v.

CIRCLE BUSINESS CREDIT, INC., and
NBD Elk Grove Bank, Defendants.

Bankruptcy No. 11–89–01033 M L.
Adv. No. 90–0252 M.

United States Bankruptcy Court,
D. New Mexico.

Dec. 11, 1991.

Arthur A. Greenfield, Albuquerque, N.M., for plaintiff.

John T. Porter, Albuquerque, N.M., for Circle Business Credit, Inc.

## MEMORANDUM OPINION

MARK B. McFEELEY, Bankruptcy Judge.

This matter came before the Court for trial on the merits on November 12, 1991. The Court had previously granted partial summary judgment in favor of the plaintiff and thus the only remaining issue for trial was Circle Business Credit, Inc.'s (CBC), counterclaim that it is entitled to recover the value of the computer system which it claims as collateral. Having considered the proposed findings and conclusions, the memoranda of law, the applicable law, and the evidence, the Court makes the following findings of fact and conclusions of law.

## FACTS

1. On March 10, 1987, Business Solutions, Inc., and Flori–Ad International, Inc. (Flori–Ad), entered into an agreement entitled "Computer System Purchase Agreement" whereby Flori–Ad agreed to purchase a computer system. The agreement was conditioned upon Flori–Ad's securing financing. Paragraph 3 of Section 1 provides that if the purchaser is unable to secure financing, "BSI shall secure for purchaser lease financing." Pltf.Ex. 1.

2. On June 30, 1987, Nationwide Funding, Inc., provided lease financing and leased to Flori–Ad a certain computer system (system). Def.Ex. F.

3. In conjunction with the lease, Flori–Ad granted to Nationwide Funding, Inc., a security interest in the system, which was perfected by filing a U.C.C.–1 statement in the office of the Secretary of State of Illinois on May 14, 1987. The equipment subject to the security interest is shown on the schedule of equipment attached to the U.C.C.–1. Def.Ex. D. On June 30, 1987, the equipment schedule was amended to include 20 Hewlett Packard # 2622 used terminals instead of 20 Wyse 60 Amber terminals. The secured party is listed as CBC. Def.Ex. D.

4. The total price of the system was $140,463. The System Purchase Agreement provided for a down payment of 10%, or $14,046.30, with the balance to be paid in 60 monthly installments of $2,667. Pltf. Ex. 1. Pursuant to ¶ 18 of the lease, Flori–Ad was unconditionally obligated to purchase the system at the end of the term for 10% of Nationwide Funding's actual cost. Def.Ex. F.

5. Flori–Ad International, Inc., was a second tier subsidiary of the debtor, Flores de New Mexico, Inc. (Flores).

6. All of Nationwide's interest in the system was assigned to CBC on July 2, 1987. Def.Ex. E.

7. On May 5, 1987, Flores executed a guaranty of payment to Nationwide Funding of Flori–Ad's obligations under the lease. Pltf.Ex. 2.

8. The assignment of lease from Nationwide to CBC included any guaranty of payment under the lease.

9. Thereafter, Flori–Ad defaulted in its payments under the lease.

10. On June 6, 1988, CBC and Flores entered into a settlement agreement. It provided for a full and complete settlement of all claims asserted by CBC against Flores. The relevant provisions of the agreement provide:

5. To induce Circle Business to forbear from initiating remedies available to it as holder of the aforesaid leases and guaranty, the undersigned agree to the following terms and conditions:

\* \* \* \* \* \*

(b) Circle Business shall arrange for the sale of the leased property consisting of computer system by a party mutually agreed upon by Circle Business and Flores. The proceeds of the sale after the deduction of expenses will be applied to the amounts due

upon the promissory note and security agreement described in paragraph 5(e);

* * * * * *

(e) Flores agrees to execute a promissory note and security agreement in favor of Circle Business in the amount of $133,000.00. Said amount is to be reduced by the net proceeds resulting from the sale of the computer system described in paragraph 5(b).

Plaintiff's Ex. 28.

11. Pursuant to the Settlement Agreement, Flores executed and delivered to CBC a promissory note for $133,000, dated July 11, 1988, Pltf.Ex. 6; a security agreement dated July 11, 1988, Pltf.Ex. 34; and a financing statement which CBC filed in the office of the County Clerk of Dona Ana County, New Mexico, on August 22, 1988. *Id.*

12. CBC executed and delivered to Flores a release dated July 14, 1988, which released Flores "from its contractual obligation as guarantor of a certain leasing agreement dated May 5, 1987, between Flori–Ad International, Inc., and Nationwide Funding, Inc. ... as stipulated in the settlement agreement dated June 6, 1988 ... and as consideration for the executed promissory note and security agreement granted to CBC by Flores." Pltf.Ex. 5.

13. Business Solutions, Inc. (BSI), was designated by CBC to sell the system. Pltf.Ex. 9.

14. BSI contacted 48 prospective purchasers in an attempt to sell the system. Only one purchaser expressed an interest but no offer was made.

15. The system was not sold by BSI.

16. On October 5, 1989, pursuant to order of this Court, all of the tangible assets of the debtor were sold at auction. The assets were sold in place, and as a single unit.

17. The price ultimately received by the debtor for the assets was $900,000.

18. The sale price was less than the amount owed Banda Negra, International, Inc. The security interest of Banda Negra arises from a loan of $1.1 million. Complaint ¶ 10. Banda Negra had a valid security interest in greenhouses, a warehouse, refrigeration coolers, tractors, a Honda Accord, and various motors, tanks, pumps, generators, carts, loaders, hand tools and miscellaneous equipment and supplies. Complaint ¶ 9. (¶ s 9 and 10 were admitted in CBC's answer).

19. CBC did not disclose its claim of ownership and/or security interest in the system, at any time prior to, or at, the auction held October 5, 1989, either to the U.S. Trustee, or to counsel for the debtor, to the Debtor, or to other creditors.

20. Counsel for CBC was present at a meeting held the morning of October 5, 1989, at the offices of counsel for the debtor, which was attended by the U.S. Trustee, counsel for the debtor, counsel for CBC, counsel for Banda Negra, and counsel for various other creditors. Although the assets to be auctioned were discussed, counsel for CBC did not disclose CBC's claim of ownership and/or security interest in the system.

21. The auction was held in the courtroom of the Bankruptcy Court on the afternoon of October 5, 1989. Among others present was counsel for CBC. In response to a direct question from the attorney for the ultimately successful bidder, the U.S. Trustee stated that the system was included in the sale. Nevertheless, counsel for CBC did not disclose CBC's claim of ownership and/or security interest in the system.

22. Adriano Russo, the designer of the software, testified that only two packages of the software were sold from 1983–89. In 1989, the software was taken off the market.

23. The price of the software component of the system when purchased by Flori–Ad was $43,750.

24. The uncontroverted evidence is that the value of the hardware is $2,900. This figure represents $1,900 for the central processing unit, and $50 each for 20 HP terminals.

25. There was no testimony regarding the whereabouts of the system or if it is being used. For purposes of this opinion,

it is assumed that the system was in Flores' possession at the time of the auction and was sold along with the rest of Flores' assets.

## DISCUSSION

Banda Negra filed this adversary proceeding to determine the secured status of CBC and NBD Elk Grove Bank. The Court ruled in favor of Banda Negra in its motion for summary judgment against both defendants on the issue of subordination, holding that Banda Negra was not subordinated to either party. The only issue remaining was that portion of CBC's counterclaim which requested that the Court value the system at $50,000 and award that amount to CBC as a creditor secured by the system. Banda Negra makes three arguments against CBC's counterclaim. The first is that the lease was not a true lease but rather was a secured transaction, with ownership in Flori–Ad. The second is that Flores was subrogated to all of the rights of CBC by virtue of the settlement agreement and the related documents. The third argument is that CBC is estopped from making any claim to the system. These arguments will be addressed in turn. In any event, the value of the computer system must be determined because Banda Negra is not secured as to the system and the value of the system must be subtracted from the proceeds of the auction.

### I. Was the Lease a True Lease or a Secured Transaction?

▪ Banda Negra argues that the equipment lease agreement, Def.Ex. F, is not a lease but rather is nothing more than a secured transaction. Paragraph 15 of the document states that the laws of Illinois shall govern. The Illinois statute defining secured transactions provides:

Whether a lease is intended as security is to be determined by the facts of each case; however, ... (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for nominal consideration does make the lease one intended for security.

Ill.Rev.Stat. ch. 26, ¶ 1–201(37) (Smith–Hurd 1991). The document itself states:

Lessee unconditionally agrees ... to purchase all of the Equipment for an amount equal to that stated on the face of this lease...."

Defendant's Ex. F, ¶ 18. The face of the lease provides that at the end of the lease, the purchase price is "10% of Lessor's 'Actual Cost' of the Equipment." In *Borg–Warner Leasing, Inc., v. Bauer,* 189 Ill. App.3d 102, 136 Ill.Dec. 547, 544 N.E.2d 1322 (1989), the Court held that the lease in question there was a true lease because the defendant was to return the equipment to the plaintiff at the end of the lease and the defendant did not have an option to purchase the equipment. In the case at bar, the situation is completely opposite. Flori–Ad was compelled to buy the equipment at the completion of the lease for 10% of the actual cost of the equipment.

In *In re Celeryvale Transport, Inc.,* 822 F.2d 16 (6th Cir.1987), the Court cited the following as "the most illustrative test" to distinguish between a lease and a secured transaction.

Whether the 'lessee' is 'obligated to accept and pay for the property or [instead] is obligated only to return or account for the property according to the terms of the lease from which he may be excused if he exercises his privilege of purchasing it.' If the former is true, then the lease is a security instrument in a disguised sale; if the latter, then a true lease exists.

*Id.* at 18 (bracket in original) (*citing to United States Fidelity & Guaranty Co. v. Thompson & Green Machinery Co., Inc.,* 568 S.W.2d 821, 825 (Tenn.1978)). Flori–Ad was obligated to buy the system; there was no contemplation that the system would be returned or accounted for. By contract, Flori–Ad had no choice but to purchase the system. Therefore, the Court finds that the document was intended to be a security instrument and was not a true lease.

### II. Subrogation

▪ Given the finding that the lease was a secured transaction, CBC, by filing

the appropriate security instruments, had a security interest in the system when it entered into the settlement agreement with Flores. Banda Negra argues that when the settlement agreement and the related documents were executed, Flores was subrogated to CBC by operation of law which means that Flores would step into CBC's position. Flores would then become a secured creditor of Flori–Ad as to the system and CBC would have no further rights to it.

The equitable doctrine of subrogation requires:

> (1) that the persons seeking its benefits must have paid a debt due to a third party before he can be substituted to that party's rights; and (2) that in doing this he must not act as a mere volunteer, but on compulsion, to save himself from loss by reason of a superior lien or claim on the part of the person to whom he pays the debt, as in cases of sureties, prior mortgages, etc.

*Prairie State Bank v. United States,* 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412 (1896). A guarantor is not a mere volunteer, but acts by compulsion. "The familiar rule is that, *instanter* upon the payment by the guarantor of the debt, the debtor's obligation to the creditor becomes an obligation to the guarantor, not a new debt, but, by subrogation, the result of the shift of the original debt from the creditor to the guarantor who steps into the creditor's shoes." *Putnam v. Commissioner,* 352 U.S. 82, 85, 77 S.Ct. 175, 176, 1 L.Ed.2d 144 (1956). To invoke the equitable doctrine of subrogation, the debt must have been paid in full. *American Surety Co. v. Westinghouse Electric Mfg. Co.,* 296 U.S. 133, 56 S.Ct. 9, 80 L.Ed. 105 (1935). The payment need not be in money. "[A]nything accepted by the creditor is sufficient, provided it is actually accepted.... [E]quity has allowed subrogation in cases [where] liability only, and not a payment, was shown." *Jones v. Jones,* 158 Kan. 196, 146 P.2d 405, 407 (1944). Therefore, for subrogation to be applied here, CBC need not have actually been paid in full but must have actually accepted the promissory note and the additional security offered by Flores as com-

plete satisfaction of Flori–Ad's debt under the equipment lease agreement.

Prior to the execution of the settlement agreement, CBC had a security interest in the system and a guarantee from Flores. When Flori–Ad defaulted on the payments, CBC pursued Flores on the guarantee. The settlement agreement of June 6, 1988, represented "the full and complete settlement of all claims heretofore asserted by Circle Business against Flores." Pltf.Ex. 3. The settlement agreement provided, *inter alia,* that CBC would obtain a promissory note from Flores in the amount of $133,000; Flores would pay accrued attorney fees; and Flores granted CBC a lien upon all of the assets of Flores, subject only to valid and properly perfected liens existing as of the date of the agreement. *Id.* Flores executed the promissory note and provided CBC with a list of assets in which CBC obtained a security interest. On July 14, 1988, CBC executed a release. It provides:

> As stipulated in the settlement agreement dated June 6, 1988 between Flores de New Mexico, Inc., (Flores) and Circle Business Credit, Inc. (CBC), and as consideration for the executed promissory note and security agreement granted to CBC by Flores, CBC hereby releases Flores de New Mexico, Inc., from its contractual obligation as guarantor of a certain leasing agreement dated May 5, 1987 between Flori–Ad International, Inc. and Nationwide Funding, Inc.

Pltf.Ex. 5. The note and the additional collateral provided to CBC by Flores show that Flores was, as a guarantor, paying the debt of Flori–Ad. The release executed by CBC evidenced CBC's acceptance of Flores' liability as payment in full of Flori–Ad's debt. Furthermore, the language in the settlement agreement which states that the proceeds from the sale of the system would first be applied to the note indicates that CBC would no longer have any say as to the proceeds of the system and thus CBC had to put specific language in the agreement so that there would be no question as to how the proceeds would be applied. The Court concludes that after the execution of the release and the acceptance of the note

and the additional collateral, Flores became subrogated to CBC's rights in the system. Therefore, CBC had no further security interest in the system.

### III. Estoppel

Banda Negra argues that CBC is estopped from claiming any interest in the system after the auction because CBC did not assert an ownership interest in the system immediately prior to or during the auction. Having ruled that CBC did not have any ownership rights or a security interest in the system after the release of the guarantee, the Court need not address Banda Negra's estoppel argument.

### IV. The Value of the System

■ The evidence is uncontroverted that the value of the hardware is $2,900. The value of the software is more difficult to ascertain. The evidence before the Court is that the software cost $43,750 when purchased. Only two software packages were sold from 1983 through 1989. When BSI attempted to sell the system in 1988, it contacted 48 potential purchasers and could not find a buyer for the system. The testimony of Adriano Russo, the developer of the software, was that it would take $19,700 to bring the maintenance contract on the system up to date and $2,500 to create a tape and send it. Russo further testified that the prices were based on an assumption that Flores was the owner of the software and wanted to have it replaced. He said that the price was "definitely not" what he would charge to a third party. The testimony was that in 1989, the last time he had the particular software for sale, he quoted the price of "around $60,000." There was no testimony regarding what it would take to obtain approval to transfer the license, as required by law. The testimony is not clear as to whether the software is usable as is or whether it would require some updating to be useful. Thus the Court is left with two extremes. Is the software valueless because there is no buyer or is the software worth what it would cost to a new user?

Although an intriguing question, the Court is reluctant to find a value when the entity that has a security interest in the system, the debtor, is not a party to this proceeding. At this point, the dispute as to who has rights to the system and its value is between the debtor and Banda Negra. Therefore, the Court declines to find a value for the system at this time.

This memorandum opinion constitutes the Court's findings of fact and conclusions of law. Bankruptcy Rule 7052. An appropriate order shall enter.

### ORDER

This matter came before the Court for trial on the merits. The Court having resolved many of the issues in a motion for summary judgment in favor of the plaintiff, the only issue remaining was the extent of CBC's security interest in the computer system measured by the value of the system. For reasons stated in the memorandum opinion entered herewith,

IT IS ORDERED that Circle Business Credit, Inc., has no security interest in the system and is an unsecured creditor of the debtor.