872 P.2d 879

**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff–Appellee,**

v.

**James A. HIATT and Laurel Ann Hiatt, Defendants–Appellants.**

No. 20379.

Supreme Court of New Mexico.

April 6, 1994.

Tucker Law Firm, P.C., Steven L. Tucker, Santa Fe, for defendants-appellants.

Keleher & McLeod, P.A., Robert H. Clark, Albuquerque, for plaintiff-appellee.

## OPINION

BACA, Justice.

Defendants–Appellants, James A. Hiatt and Laurel Ann Hiatt (the Hiatts), appeal the denial of their motion to set aside a default judgment entered against them. The Hiatts argued to the trial court that the judgment should have been set aside under SCRA 1986, 1–060(B)(4) (Repl.Pamp.1992), because the trial court lacked personal jurisdiction over them when it entered the default judgment, and that, consequently, the judgment was void. On appeal, the Hiatts present a single issue: Whether the trial court had personal jurisdiction over them when it entered the default judgment. We review this case pursuant to SCRA 1986, 12–102(A)(1) (Repl.Pamp.1992), and reverse.

### I

This case arose out of two loans made to the Deerfield Development Corporation (Deerfield), a New Mexico corporation, by First National Bank of Lea County (the Bank). Both loans were made pursuant to an agreement, which was executed on June 28, 1982, in Lea County, New Mexico. The loan principal was for $735,000. The agreement was also signed by four guarantors: Thomas and Janet David, who were residents of New Mexico, and the Hiatts, who were residents of California. After the agreement was signed on behalf of the Bank and Deerfield and by the Davids as guarantors on June 28, it was forwarded to California, where it was signed by the Hiatts as guarantors on July 9, 1982. On the same day, the Hiatts also signed a guaranty agreement, which was expressly incorporated by reference into the loan agreement, guaranteeing Deerfield's payment of loans made pursuant to the loan agreement in an amount not to exceed $735,500. The guaranty agreement recited that the Bank was unwilling to extend credit to Deerfield unless the guaranty was duly executed by the Hiatts. Mr. David, an officer of Deerfield, had requested the Hiatts to guarantee the loan in early 1982. Pursuant to the terms of the loan agreement, Deerfield gave the Bank a promissory note dated June 28, 1982, in the amount of $640,000, due and payable in full, with interest, on June 28, 1983. Contemporaneously with its execution of the promissory note, Deerfield executed and delivered to the Bank a mortgage on real property in Lea County as security for payment of the note. The note indicated that it was also secured by the Davids' and the Hiatts' guarantees, as well as by an assignment of a certificate of deposit for $140,000 and an assignment of life insurance on Mr. David's life.

Some payments were made on the promissory note. On December 16, 1982, the Bank made an additional loan to Deerfield and Deerfield accordingly gave the Bank another promissory note, dated December 16, 1982, in the principal amount of $211,000, due and payable on December 16, 1983. The second note did not mention on its face whether it was secured by the Hiatts' guaranty and the record fails to disclose that the Hiatts guaranteed the second loan. Sometime before February 6, 1984, Deerfield defaulted on both notes. The total amount owing on the first note as of February 6, 1984, was $255,306.23. The total amount owing on the second note as of the same date was $228,452.50,

and the total on both notes was $483,748.73. Although the complaint ultimately filed by the Bank, which by then had changed its name to First City National Bank (First City), alleged that the second loan was made pursuant to the terms of the June 28, 1982, loan agreement, we do not assume this allegation to be true because we find that the Hiatts are not subject to personal jurisdiction in New Mexico courts, and, therefore, will not further discuss the second loan.

On February 20, 1984, First City[1] filed a complaint in the District Court of Lea County, New Mexico, naming Deerfield, as well as various parties who had signed guarantees on behalf of Deerfield, or who had an interest of record in the subject real property, as defendants. On March 19, 1984, the Hiatts were personally served in California with the summons and complaint. The Hiatts did not file an answer or any other responsive pleading and did not enter an appearance. On September 19, 1986, the case proceeded to judgment against all parties. On October 14, 1988, a deficiency judgment was entered in favor of the FDIC and against the Hiatts in the sum of $580,692.82.

On February 12, 1991, the Hiatts filed a motion to set aside the judgment under SCRA 1986, 1–060(B). The Hiatts argued in their motion that the judgment was void because the court lacked personal jurisdiction over them.

The trial court in its findings of fact and conclusions of law determined that the Hiatts had been personally served in California with a summons and a copy of the complaint on March 19, 1984. The trial court found that the Hiatts neither pleaded nor otherwise defended in the case until February 12, 1991, when they filed their motion to set aside the default judgment entered against them on September 19, 1986. The trial court also made additional findings and conclusions to support its judgment that the Hiatts had sufficient minimum contacts with New Mexico to be constitutionally subject to suit in this state.

## II

The question before us is whether merely signing a guaranty in another state, by itself, subjects the guarantor to personal jurisdiction in New Mexico. In order for our courts to exercise personal jurisdiction over nonresident, out-of-state defendants, the following three-part test must be satisfied:

(1) the defendant's act must be one of the five enumerated in the long-arm statute; (2) the plaintiff's cause of action must arise from the act; and (3) minimum contacts sufficient to satisfy due process must be established by the defendant's act.

*State Farm Mut. Ins. Co. v. Conyers,* 109 N.M. 243, 244, 784 P.2d 986, 987 (1989) (citing *Salas v. Homestake Enterprises, Inc.,* 106 N.M. 344, 345, 742 P.2d 1049, 1050 (1987)). The first and third step of this test have been "repeatedly equated" with the due process standard of "minimum contacts." *Kathrein v. Parkview Meadows, Inc.,* 102 N.M. 75, 76, 691 P.2d 462, 463 (1984) (citing *Telephonic, Inc. v. Rosenblum,* 88 N.M. 532, 534, 543 P.2d 825, 827 (1975)). Because we have interpreted the long-arm statute as extending our personal jurisdiction as far as constitutionally permissible, *United Nuclear Corp. v. General Atomic Co.,* 91 N.M. 41, 42, 570 P.2d 305, 306 (1977), it is not necessary to determine whether the Hiatts transacted business within New Mexico in any technical sense. When the state courts have construed the state long-arm statute as being coextensive with the requirements of due process, "the usual two-step analysis collapses into a single search for the outer limits of what due process permits." *Forsythe v. Overmyer,* 576 F.2d 779, 782 (9th Cir.), *cert. denied,* 439 U.S. 864, 99 S.Ct. 188, 58 L.Ed.2d 174 (1978).

A state court may exercise personal jurisdiction over a non-resident defendant only if there are "minimum contacts" between the defendant and the forum state. The contacts must be enough so that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90

---

1. After the filing of the complaint, First City changed its name to Moncor Bank, N.A., which later went into receivership, and FDIC ultimately succeeded to its interest.

L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). Before personal jurisdiction can be exercised, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).

 Although it is essential that the defendant's conduct and connection with the forum state be such "that he should reasonably anticipate being haled into court there," *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980), " 'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *Id.* at 295, 100 S.Ct. at 566. In fact, this Court recently held that the purposeful availment test of *Hanson* is the *"key focus"* in analyzing minimum contacts questions. *Conyers,* 109 N.M. at 245, 784 P.2d at 988 (emphasis added). Therefore, our inquiry will focus on whether the transaction entered into by the Hiatts amounts to a purposeful decision by the Hiatts to participate in the local economy and to avail themselves of the benefits and protections of New Mexico law. Applying this standard, we conclude that the Hiatts' contacts were insufficient to satisfy the requirements of due process.

It is the required purposefulness on the part of the defendants, in establishing their contact with New Mexico, that is lacking in this case. The record fails to disclose that the Hiatts purposefully availed themselves of ·the benefits and protections of New Mexico laws. Likewise, the record does not indicate that the Hiatts anticipated that they would derive any economic benefit as a result of their guaranty. The Hiatts maintained no residence or business in New Mexico and do not own any real or personal property in New Mexico. The only contact they have had with New Mexico is to have been guarantors on a loan agreement executed in California, which was entered into pursuant to an agreement which Deerfield and First City had already worked out in New Mexico. The Hiatts "stepped into a business arrangement which [Deerfield] and [First City] had already established, and did not purposefully avail [themselves] of the 'privilege of conducting activities within' New Mexico, 'thus invoking the benefits and protections' of New Mexico law." *Customwood Mfg., Inc. v. Downey Constr. Co.,* 102 N.M. 56, 58, 691 P.2d 57, 59 (1984) (quoting *Hanson v. Denckla,* 357 U.S. at 253, 78 S.Ct. at 1240)). Additionally, no choice of law provision favoring New Mexico was included as part of the guaranty agreement,[2] and because the agreement was executed in California, the application of our traditional lex loci contractus rule results in the application of California law. *Walter E. Heller & Co. v. Stephens,* 79 N.M. 74, 77, 439 P.2d 723, 726 (1968); *Boggs v. Anderson,* 72 N.M. 136, 140, 381 P.2d 419, 422 (1963).

Although the Hiatts may have reasonably foreseen that the execution or breach of the guaranty agreement would have some impact in this state, they did not take any actions so as to purposefully avail themselves of the benefits and protections of New Mexico law.

Although this Court has not recently considered the question presented in this case—whether assertion of personal jurisdiction over nonresident guarantors offends the requirements of the due process clause—our holding today is consistent with the many other jurisdictions' holdings on this issue.[3]

---

2. Even had such a clause existed, it is unclear whether that would have been enough to confer personal jurisdiction. *See Telco Leasing, Inc. v. Marshall County Hosp.,* 586 F.2d 49 (7th Cir. 1978) (holding that a choice of law provision in a lease did not serve as a basis for jurisdiction); *see also Northern Trust Co. v. Randolph C. Dillon, Inc.,* 558 F.Supp. 1118, 1123–24 (N.D.Ill.1983) (holding that a choice of law provision is not sufficient to confer personal jurisdiction over a nonresident defendant).

3. We note that in *Hunter–Hayes Elevator Co. v. Petroleum Club Inn Co.,* 77 N.M. 92, 419 P.2d 465 (1966), we found that jurisdiction existed over an Oklahoma resident and a California resident where the defendants were actively engaged in the negotiations of the loan, had been present in New Mexico several times to attend these negotiations, and had been partly responsible for procuring the underlying loan to the corporation. In *Hunter–Hayes* we held that the traditional notions of fair play and substantial justice were

Federal courts presiding over diversity cases and applying state law have held that nonresident guarantors do not purposefully avail themselves of the benefits and protections of the laws of the forum state merely by executing a guarantee of an obligation of a resident debtor in connection with a local project in favor of a resident creditor, particularly where the guarantor has no financial interest in the debtor. For example, in *Arkansas Rice Growers Cooperative Ass'n v. Alchemy Industries, Inc.*, 797 F.2d 565 (8th Cir.1986), the underlying transaction was the construction of a processing plant in Arkansas. Alchemy Industries, Inc., entered into a contract with an Arkansas corporation for the construction. Several Alchemy shareholders, who were residents of California, guaranteed the construction obligation. After the construction was completed, Alchemy defaulted and the Arkansas corporation sued Alchemy and the individual guarantors. The court upheld a judgment against Alchemy, but reversed the judgment against the guarantors and dismissed those claims for lack of personal jurisdiction. The court held that, "[t]he mere fact that the individual defendants guaranteed an obligation to an Arkansas corporation does not subject the guarantors to jurisdiction in Arkansas." *Id.* at 573. In fact, the court stated that it had found "no case in which a court has asserted jurisdiction over a nonresident guarantor merely because the guarantor is a passive investor in the corporation whose debt the guarantor assures." *Id.* at 574.

Similarly, in *Bond Leather Co. v. Q.T. Shoe Mfg. Co.*, 764 F.2d 928 (1st Cir.1985), a nonresident guarantor guaranteed a loan to his brother's corporation, Q.T. Q.T. was a Massachusetts corporation engaged in the manufacture of shoes, and it purchased raw leather from Bond, another Massachusetts corpo-

ration. The guarantor, a resident of Ohio, had no financial interest in the debtor corporation. Q.T. went bankrupt and Bond filed suit against Q.T. and the guarantor. The court held that the creditor failed "to identify any contract rights created by the guaranty in [the guarantor] which could have been enforced in the Massachusetts courts and which could fairly be said to represent an intent by [the guarantor] to reap the benefits of Massachusetts law." *Id.* at 934. Moreover, the court stated that "absent any intent by [the guarantor] to exploit the local economy, as has been required not only in prior cases addressing jurisdiction over nonresident guarantors but more generally in cases upholding jurisdiction, we cannot say that [the guarantor], on the basis of its isolated acts, availed itself of the benefits of transacting business in Massachusetts and should reasonably have anticipated being haled into court there." *Id.* at 934–35 (citing *World–Wide Volkswagen,* 444 U.S. at 297–98, 100 S.Ct. at 567) (citation omitted); *see also United Fed. Sav. Bank v. McLean,* 694 F.Supp. 529, 535 (C.D.Ill.1988) (holding that being a guarantor along with making payments in forum state is an insufficient basis to invoke personal jurisdiction)[4]; *Reverse Vending Assoc. v. Tomra Systems US, Inc.,* 655 F.Supp. 1122, 1127 (E.D.Pa.1987) (holding that "a non-resident defendant's contract, in this case a guaranty, with a Pennsylvania business entity *alone* cannot automatically establish sufficient minimum contacts."); *Northern Trust Co. v. Randolph C. Dillon, Inc.,* 558 F.Supp. 1118, 1123 (N.D.Ill.1983) (holding there was no personal jurisdiction over nonresident guarantor of equipment lease although payments were made to Illinois bank, the guaranty was accepted in Illinois, and it provided that it would be gov-

not offended by the exercise of jurisdiction. However, *Hunter–Hayes* is not dispositive where, as here, the guarantors mechanically executed the guaranty and mailed it back to the forum. Additionally, *Hunter–Hayes,* was decided before any of the recent seminal Supreme Court cases involving minimum contacts were decided, such as *Asahi Metal Ind. v. Superior Court,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), *Burger King v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), *Keeton v. Hustler Magazine,* 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790

(1984), *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), *World–Wide Volkswagen,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), and *Kulko v. Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978).

**4.** Cases from Illinois may be "persuasive authority" since our long-arm statute was taken from that state. *Customwood,* 102 N.M. at 58, 691 P.2d at 59.

erned by Illinois law); *Liberty Leasing Co. v. Milky Way Stores, Inc.,* 352 F.Supp. 1210, 1211 (N.D.Ill.1973) (holding no personal jurisdiction over nonresident guarantor); *Misco Leasing, Inc. v. Vaughn,* 450 F.2d 257, 260 (10th Cir.1971) (holding that being a guarantor alone is an insufficient basis to invoke personal jurisdiction).

In addition to the federal courts, state courts also hold that merely signing a guaranty, in and of itself, is insufficient contact to confer personal jurisdiction. *See, e.g., Edwards v. Geosource, Inc.,* 473 So.2d 36, 37 (Fla.Dist.Ct.App.1985) ("signing a promissory obligation, in and of itself, is insufficient contact to confer personal jurisdiction"); *Sibley v. Superior Court,* 546 P.2d 322, 325 (Cal.1976) (holding that petitioner did not purposefully avail himself of the privilege of conducting business in California or of the benefits and protections of California laws where petitioner-guarantor had executed a guaranty in Florida guaranteeing payments to a California partnership), *cert. denied,* 429 U.S. 826, 97 S.Ct. 82, 50 L.Ed.2d 89 (1976); *accord United Buying Group, Inc. v. Coleman,* 296 N.C. 510, 251 S.E.2d 610, 616 (1979) ("The mere *act* of signing [a guaranty in favor of a resident of the forum] or endorsement does not in and of itself constitute a sufficient contact upon which to base in personam jurisdiction over a nonresident."); *Basic Food Indus., Inc. v. Eighth Judicial Dist. Court,* 94 Nev. 111, 575 P.2d 934, 936 (1978) (holding that when "no more appears than that the guarantor has mechanically executed the guaranty and mailed it back to the forum," finding personal jurisdiction would offend traditional notions of fair play and substantial justice).

■ The FDIC urges us to find that the Hiatts are subject to the exercise of personal jurisdiction in New Mexico based on several cases cited in its brief in chief. However, in all of these cases, the guarantor has been an officer or a director or an active shareholder in the debtor corporation. For example, in *Coleman,* the court upheld personal jurisdiction over the defendant who, in addition to having signed a guaranty, had an interest in a corporation that dealt with the in-state corporation. The court held that where the

defendant is a principal shareholder of the corporation and conducts business in North Carolina as principal agent for the corporation, then his corporate acts may be attributed to him for the purpose of determining whether the courts of this State may assert personal jurisdiction over him.

251 S.E.2d at 614.[5] Similarly, in *National Can Corp. v. K Beverage Co.,* 674 F.2d 1134, 1137 (6th Cir.1982), the court held that where the guarantors were officers and shareholders of the debtor corporation, such direct economic interest in the corporation furnished the necessary minimum contacts. *See also Marcus Food Co. v. Family Foods of Tallahassee, Inc.,* 729 F.Supp. 753 (D.Kan. 1990) (guarantor was president and sole shareholder of debtor corporation); *First Sec. Bank v. McMillan,* 627 F.Supp. 305 (W.D.Mich.1985) (guarantor was officer of debtor corporation); *Marathon Metallic Bldg. Co. v. Mountain Empire Constr. Co.,* 653 F.2d 921 (5th Cir. Unit A Aug. 1981) (guarantor was officer, director and shareholder of debtor corporation); *Continental Bank N.A. v. Everett,* 742 F.Supp. 508 (N.D.Ill.1990), *aff'd,* 964 F.2d 701 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 816, 121 L.Ed.2d 688 (1992) (guarantors were officers, directors and shareholders of debtor corporation); *BRS, Inc. v. Dickerson,* 278 Or. 269, 563 P.2d 723 (1977) (guarantors were principals and officers of corporate debtor). When a substantive identity between the guarantor and the debtor is shown, as in the above cases, the guarantor may be said to have purposefully availed himself of the benefits and protections of the laws of the forum state and may have the minimum contacts with the forum state sufficient to meet the due process requirements of the exercise of personal jurisdiction by the forum state.

---

5. The North Carolina Supreme Court also held that the second defendant-guarantor who had no ties with the debtor corporation was not subject to in personam jurisdiction in North Carolina. The court stated, "[t]he mere *act* of signing such a guaranty or endorsement does not in and of itself constitute a sufficient contact upon which to base in personam jurisdiction over a nonresident." *Id.* at 616.

In conclusion, we hold that the signing of a guaranty by a nonresident of a debt owed to a New Mexico creditor does not in and of itself constitute a sufficient contact upon which to base in personam jurisdiction over a nonresident. Rather, the circumstances surrounding the signing of such obligations must be closely examined in each case to determine whether the quality and nature of defendant's contacts with New Mexico justify the assertion of personal jurisdiction over him in an action on the obligation. Here, the Hiatts did nothing more than sign a guaranty for a New Mexico corporation in which they had no interest. The Hiatts did not purposefully avail themselves of the benefits and protections of New Mexico law by merely guaranteeing a loan, and hence their activity does not meet the due process requirement of minimum contacts. The judgment of the trial court is REVERSED.

**IT IS SO ORDERED.**

RANSOM, FRANCHINI and FROST, JJ., concur.

MONTGOMERY, C.J., Dissenting.

MONTGOMERY, Chief Justice (dissenting).

In *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), one of the most recent of the "recent seminal Supreme Court cases" cited in footnote 3 to the majority's opinion, the Court said: "[T]he Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed." *Id.* at 474, 105 S.Ct. at 1283.. The Court continued:

> Thus where the defendant "deliberately" has engaged in significant activities within a State, *or has created "continuing obligations" between himself and residents of the forum,* he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Id.* at 475–76, 105 S.Ct. at 2184 (emphasis added; citations omitted). And:

> [W]ith respect to interstate contractual obligations, we have emphasized that parties who "reach out beyond one state and *create continuing relationships and obligations* with citizens of another state" are subject to regulation and sanctions in the other State for the consequences of their activities.

*Id.* at 473, 105 S.Ct. at 2182 (quoting *Travelers Health Ass'n v. Virginia,* 339 U.S. 643, 647, 70 S.Ct. 927, 929, 94 L.Ed. 1154 (1950) (emphasis added)).

In the present case, the trial court concluded—upon an admittedly sparse record—that by entering into the loan agreement and personal guaranties with the Bank, the Hiatts purposely availed themselves of the privilege of conducting business in New Mexico. I believe the court was correct in so concluding, based on the following facts (which *do* appear in the record): In early 1982, the Hiatts were requested by Mr. David, an officer of Deerfield, to guarantee a loan to Deerfield in connection with a development project in Hobbs. They agreed to guarantee the loan, and the loan agreement they signed contemplated that the loan was to be secured by various items of collateral, including their personal guaranties and the guaranties of Mr. and Mrs. David. The guaranty that the Hiatts signed, at the same time as they signed the loan agreement in July 1982, recited that they desired that the Bank extend credit to Deerfield and acknowledged that the Bank was unwilling to extend such credit unless they executed the guaranty. The guaranty was a continuing obligation (up to $735,500), to last at least until the loan or loans made pursuant to the loan agreement were paid or until the Hiatts gave notice that they would no longer be liable on the guaranty (with respect to loans made after such notice was given). The promissory notes executed pursuant to the loan agreement were payable at the Bank's offices in Hobbs and were secured by a mortgage on real estate in Lea County.

In sum, we have here a loan, made possible in part by the Hiatts' guaranty, to a New Mexico borrower from a New Mexico bank, payable in New Mexico, secured by a mort-

gage on New Mexico realty, made for the purpose of carrying out a development in a New Mexico community, and guaranteed by New Mexico residents (in addition to the Hiatts). There is no indication that the Hiatts' guaranty was not executed "voluntarily" or "deliberately," and their affidavits affirmatively establish that they executed it through their own volition in response to a Deerfield officer's request. Thus, the Hiatts' contact with New Mexico certainly cannot be characterized as "random" or "fortuitous"— nor, I submit, as "attenuated" either. *See Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183 ("[The] 'purposeful availment' requirement [of *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958) ] ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.' " (citations omitted)). Haling the Hiatts into New Mexico because they facilitated the Deerfield–Bank loan transaction clearly would not be a result of either the Bank's or Mr. David's "unilateral activity."

As noted above, when the activities of a defendant who has availed himself of the privilege of conducting business in a forum "are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184. *See also Hanson,* 357 U.S. at 253, 78 S.Ct. at 1239–40 ("[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."). It cannot be denied that by signing the loan agreement and guaranty in this case the Hiatts invoked a number of benefits and protections under New Mexico law. These protections relate

primarily to rights and remedies against the principal obligor, Deerfield, and against their co-guarantors, Mr. and Mrs. David.[1] Under Section 103 of the *Restatement of Security* (1941) (the *Restatement* ), the principal obligor on a debt has a duty to the surety (the guarantor)[2] as well as to the creditor. When the surety pays out on the guaranty, it has the right to reimbursement against the principal. *Id.* § 104. Under Section 141, the surety who has paid out can be subrogated to the rights of the creditor against the principal, against any property that stands as security, and against any co-sureties. *See In re Flores de New Mexico, Inc.,* 134 B.R. 433, 437 (Bkrtcy.D.N.M.1991) (" 'The familiar rule is that, *instanter* upon the payment by the guarantor of the debt, the debtor's obligation to the creditor becomes an obligation to the guarantor, not a new debt, but, by subrogation, the result of the shift of the original debt from the creditor to the guarantor who steps into the creditor's shoes.' " (quoting *Putnam v. Commissioner,* 352 U.S. 82, 85, 77 S.Ct. 175, 176, 1 L.Ed.2d 144 (1956))). *See also State Farm Mut. Auto. Ins. Co. v. Foundation Reserve Ins. Co.,* 78 N.M. 359, 363, 431 P.2d 737, 741 (1967) ("The remedy [of subrogation, in the insurance context] is for the benefit of one secondarily liable who has paid the debt of another and to whom in equity and good conscience should be assigned the rights and remedies of the original creditor."); *Fireman's Fund Am. Ins. Cos. v. Phillips, Carter, Reister & Assocs.,* 89 N.M. 7, 9, 546 P.2d 72, 74 (Ct.App.) ("New Mexico has allowed subrogation where one secondarily liable pays a debt and then proceeds against one primarily liable, stating that it is allowed in such a case because the one secondarily liable had a 'legal interest to protect.' "), *cert. denied,* 89 N.M. 5, 546 P.2d 70 (1976).

Under Section 112 of the *Restatement,* a surety also has the right to exoneration

---

1. Under principles of suretyship, the Hiatts as guarantors would also have had rights and remedies against the Bank, such as the right to require the Bank to marshall its assets and exhaust its rights with respect to the collateral before resorting to their obligations as guarantors. However, the Hiatts waived or relinquished most or all of such rights in the guaranty they signed.

2. Section 82, comment g, of the *Restatement* states: "The term 'guaranty' is used in this Restatement as a synonym for suretyship. 'Guarantor' is used as a synonym for surety. 'Guarantee' is used as a verb meaning to assume a suretyship obligation."

against its principal if the surety has a current obligation to pay out on a guaranty of the principal's obligation. Although I know of no New Mexico case that applies this right of exoneration, I see no reason why we would not adopt the law as contained in the *Restatement* and hold that, where the principal obligor can satisfy the obligation himself or itself, "[i]t is inequitable for the surety to be compelled to suffer the inconvenience and temporary loss which a payment by him will entail if the principal can satisfy the obligation." *Id.* § 112, cmt. a; *Gardner v. Bean,* 677 P.2d 1116, 1119 (Utah 1984) ("Exoneration permits a guarantor to compel a principal to pay an entire obligation then due.") (citing *Restatement* § 112).

With respect to the right of contribution from co-sureties, Section 149 of the *Restatement* gives the surety the right to such contribution if the surety has paid more than the surety's proportionate share. *See First Nat'l Bank v. Energy Equities, Inc.,* 91 N.M. 11, 17, 569 P.2d 421, 427 (Ct.App.1977) (recognizing right of guarantor to contribution against co-guarantors); *see also Gardner,* 677 P.2d at 1118 (same) (citing *Restatement* § 149 cmt. a).

Thus, under generally accepted principles of suretyship and in light of existing New Mexico caselaw, I surmise that the Hiatts would have, under New Mexico law, the rights of reimbursement and exoneration against their principal, Deerfield, as well as the right of subrogation to the Bank's interest in any assets that stood as security and the right of contribution against their co-guarantors, Mr. and Mrs. David.

Section 164 of the *Restatement,* comment a, states: "Payment by a surety gives rise to rights of reimbursement and contribution. In the ultimate settlement the rights of several parties must be adjudicated. If possible, in order to avoid needless litigation, these rights should be determined in one action." Similarly, the Court in *Burger King* noted that a factor in determining whether the assertion of personal jurisdiction would comport with "fair play and substantial justice" is "the interstate judicial system's interest in obtaining the most efficient resolution of controversies." *Burger King,* 471 U.S. at 477,

105 S.Ct. at 2184 (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980)). In light of the foregoing considerations, I suggest that New Mexico is the only place where all the rights of the various parties could be adjudicated in a single action. Ironically, statute of limitations considerations aside, the majority's holding requires the FDIC to sue the Hiatts in California and, if the FDIC recovers, the Hiatts to sue Deerfield (if it still exists and has assets) and the Davids in New Mexico for reimbursement and contribution. I see no justification for imposing this circuitous and inefficient, multiple-litigation requirement on the parties to resolve a dispute over what was unquestionably (insofar as the Hiatts were concerned) an interstate commercial transaction—with, however, no feature outside New Mexico other than the fortuitous circumstance that the Hiatts signed the guaranty in California and then "mechanically" mailed it back to New Mexico.

In these days of computers and modems, cellular phones and fax machines, overnight courier services and fiber optic networks, I cannot see why the majority balks at the reality that this nation is not a collection of fifty balkanized republics but is rather an integrated, highly commercialized, free (at least in theory) market, in which territorial divisions operate under the Due Process Clause to protect individual rights—not, as *Burger King* said, to act as a shield against interstate obligations voluntarily assumed. *See also Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184 ("[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted."); *but see Hanson v. Denckla,* 357 U.S. at 251, 78 S.Ct. at 1238 ("[Territorial] restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States."); and *compare Burger King,* 471 U.S. at 472 n. 13, 105 S.Ct. at 2184 n. 13 ("Although th[e] protection [of due process]

operates to restrict state power, it 'must be seen as ultimately a function of the individual liberty interest preserved by the Due Process Clause' rather than as a function 'of federalism concerns.'" (quoting *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702–03 n. 10, 102 S.Ct. 2099, 2105 n. 10, 72 L.Ed.2d 492 (1982))).

The majority's footnote 3 denigrates the precedential value of our own case of *Hunter–Hayes Elevator Co. v. Petroleum Club Inn Co.*, 77 N.M. 92, 419 P.2d 465 (1966). In that case we upheld personal jurisdiction over individual nonresident defendants who executed, outside New Mexico, personal guarantees of promissory notes executed by a New Mexico corporation and secured by New Mexico real estate—but payable in Oklahoma. The proceeds from the notes were to be used for construction of a building in New Mexico on the mortgaged land. In a guaranty transaction—where the contacts with New Mexico were certainly more "attenuated" than they are here, since the guaranteed notes were payable in another state—we found that "traditional notions of fair play and substantial justice [were] not offended" by the exercise of personal jurisdiction over the guarantors in New Mexico. *Id.* at 96, 419 P.2d at 467.

Similarly, there are various cases around the country in which, in different contexts, minimal commercial activity within a state has been deemed sufficient for an exercise of personal jurisdiction. *See, e.g., FDIC v. O'Donnell*, 136 B.R. 585, 591 (D.D.C.1991) (personal jurisdiction exercised over nonresident defendants who guaranteed a promissory note; no "substantive identity" between guarantor and obligor indicated by opinion); *Panos Investment Co. v. District Court*, 662 P.2d 180, 182 (Colo.1983) (en banc) (jurisdiction over nonresident guarantors upheld: "a guarantee by its very nature is a purposeful act. The obligation to which the guarantee relates is payable in Colorado.... It is not unreasonable to subject a guarantor to the jurisdiction of courts in the very state where

an obligation is specifically payable when the makers fail to perform their obligations and the guarantee becomes operable."); *Van Schaack & Co. v. District Court*, 189 Colo. 145, 538 P.2d 425 (1975) (en banc) (personal jurisdiction over nonresident issuer of letter of credit upheld based in part on issuer's inducing conduct in forum state); *Stephenson v. Barringer*, 758 F.Supp. 657, 662 (D.Kan.1991) (personal jurisdiction sustained over nonresident insurance agency that insured risk in forum state; "an insurance company that reaches across state boundaries and contracts with residents of a foreign state to provide insurance makes itself and its agents amenable to personal jurisdiction in that state"); *Jeffreys v. Exten*, 784 F.Supp. 146, 153 (D.Del.1992) (personal jurisdiction over nonresident mortgagee of forum state property upheld; mortgagee had "affirmatively taken an interest in [the forum state's] real property and would presumably invoke the protection and benefit of its laws if the mortgage terms were not complied with").

Finally, I wish to register my continuing objection to this Court's rigid adherence [3] to the lex loci contractus choice-of-law rule for deciding which state's law will govern a dispute over a contract. *Cf. Nez v. Forney*, 109 N.M. 161, 164–65, 783 P.2d 471, 474–75 (1989) (Montgomery, J., specially concurring) (criticizing distinction between "substance" and "procedure" in selecting choice-of-law provision in contract case and advocating approach based on respective states' interests in issues involved in controversy). There is no issue in this case concerning the applicability of California or New Mexico law to the Hiatts' guaranty, and I doubt that, even if there were such an issue, there is any conflict between the laws of the two states. In any event, I cannot conceive of a case in which the forum state (here New Mexico) would have a stronger interest in applying its law to the facts of the case—i.e., a more significant relationship with the dispute—than exists in this case.

---

**3.** In *State Farm Mutual Insurance Co. v. Conyers*, 109 N.M. 243, 246–48, 784 P.2d 986, 989–91 (1989), authored by Justice Baca, author of today's majority opinion, this Court displayed a

willingness to consider an approach, such as that embodied in Section 6 of the *Restatement (Second) of Conflict of Laws* (1971), other than the strict lex loci contractus rule.

For the foregoing reasons, I would affirm the trial court's order refusing to set aside the default judgment against Mr. and Mrs. Hiatt.