# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2025-NMSC-022

Filing Date: April 10, 2025

No. S-1-SC-39689

**SHOOK, HARDY & BACON LLP,**

Petitioner,

v.

**HON. MATTHEW J. WILSON,**
**District Court Judge,**
**First Judicial District Court,**

Respondent,

and

**HENRY TRUJILLO, SHAMIE SPENCE,**
**SAMUEL MONTOYA, THERESA**
**MONTOYA, and MICHAEL BARR,**

Real Parties in Interest.

**ORIGINAL PROCEEDING**

Brownstein Hyatt Farber Schreck, LLP
Eric R. Burris
Debashree Nandy
Albuquerque, NM

Williams & Connolly LLP
Lisa S. Blatt
Margaret A. Keeley
Amy Mason Saharia
Washington, DC

for Petitioner Shook, Hardy & Bacon LLP

Peifer, Hanson, Mullins & Baker, P.A.
Charles R. Peifer
Matthew E. Jackson

Albuquerque, NM

for Petitioner Womble Bond Dickinson (US) LLP

Hinkle Shanor LLP
Kurt B. Gilbert
Santa Fe, NM

for Petitioner Covington & Burling LLP

Durham, Pittard & Spalding LLP
Rosalind B. Bienvenu
Caren I. Friedman
Justin R. Kaufman
Philip M. Kovnat
Santa Fe, NM

Jaramillo Law Firm, P.C.
David J. Jaramillo
Albuquerque, NM

The Alverez Law Firm
Alex Alverez
Coral Gables, FL

for Real Parties in Interest

**CONSOLIDATED WITH**

**No. S-1-SC-39706**

**WOMBLE BOND DICKINSON (US) LLP,**

Petitioner,

v.

**HON. MATTHEW J. WILSON and
HON. MARIA SANCHEZ-GAGNE,
District Court Judges,
First Judicial District Court,**

Respondents,

and

**HENRY TRUJILLO; SHAMIE SPENCE;**

**SAMUEL MONTOYA; THERESA MONTOYA;
MICHAEL BARR; CHRIS SANDOVAL;
ISABEL SANDOVAL; CICCELO SOLANO;
BRENDA MASSEY; PHILIP MORRIS USA, INC.;
SHOOK, HARDY & BACON LLP; COVINGTON
& BURLING LLP; ALLSUP'S CONVENIENCE
STORES, LLC; ALLSUP'S, LLC; G & J BROOKS
ENTERPRISES, INC.; THE MICHAEL ROMERO
FAMILY, INC.; TOBACCO XPRESS LLC; and
TIWA ENTERPRISES, INC.,**

Real Parties in Interest.

Peifer, Hanson, Mullins & Baker, P.A.
Charles R. Peifer
Matthew E. Jackson
Albuquerque, NM

for Petitioner

Raúl Torrez, Attorney General
Kaythee Hlaing, Assistant Attorney General
Santa Fe, NM

for Respondents

Durham, Pittard & Spalding LLP
Rosalind B. Bienvenu
Caren I. Friedman
Justin R. Kaufman
Philip M. Kovnat
Santa Fe, NM

Jaramillo Law Firm, P.C.
David J. Jaramillo
Albuquerque, NM

The Alverez Law Firm
Alex Alverez
Coral Gables, FL

for Real Parties in Interest

**AND**

**No. S-1-SC-39725**

**COVINGTON & BURLING LLP,**

       Petitioner,

v.

**HON. MATTHEW J. WILSON and
HON. MARIA SANCHEZ-GAGNE,
District Court Judges,
First Judicial District Court,**

       Respondents,

and

**HENRY TRUJILLO; SHAMIE SPENCE;
SAMUEL MONTOYA; THERESA MONTOYA;
MICHAEL BARR; CHRIS SANDOVAL;
ISABEL SANDOVAL; CICCELO SOLANO;
BRENDA MASSEY; PHILIP MORRIS USA, INC.;
SHOOK, HARDY & BACON LLP;
WOMBLE BOND DICKINSON (US) LLP;
ALLSUP'S CONVENIENCE STORES, LLC;
ALLSUP'S, LLC; G & J BROOKS ENTERPRISES, INC.;
THE MICHAEL ROMERO FAMILY, INC.;
TOBACCO XPRESS LLC; and
TIWA ENTERPRISES, INC.,**

       Real Parties in Interest.

Hinkle Shanor LLP
Kurt B. Gilbert
Santa Fe, NM

for Petitioner

Durham, Pittard & Spalding LLP
Rosalind B. Bienvenu
Caren I. Friedman
Justin R. Kaufman
Philip M. Kovnat
Santa Fe, NM

Jaramillo Law Firm, P.C.
David J. Jaramillo
Albuquerque, NM

The Alverez Law Firm
Alex Alverez
Coral Gables, FL

for Real Parties in Interest

**OPINION**

**VIGIL, Justice.**

## I.    INTRODUCTION

**{1}**    Before a state may render an enforceable judgment against a defendant, that defendant must possess certain "minimum contacts" with the state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316-17 (1945) (internal quotation marks and citation omitted). This personal jurisdiction requirement can be satisfied in one of two ways: (1) through general personal jurisdiction which extends to all claims against the defendant, or (2) through specific personal jurisdiction which "extends only to claims that arise out of or relate to the defendant's contacts with the forum" state. *Chavez v. Bridgestone Ams. Tire Operations, LLC*, 2022-NMSC-006, ¶ 23, 503 P.3d 332 (internal quotation marks and citation omitted). A state may exercise general personal jurisdiction over a defendant if the defendant is "essentially at home in the forum State." *Id.* ¶¶ 3, 24 (emphasis omitted) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014)). In contrast, a state may exercise specific personal jurisdiction over a nonresident defendant if the defendant has purposefully directed its activities towards the forum state such that it can reasonably foresee being brought into court there. *Fed. Deposit Ins. Co. v. Hiatt*, 1994-NMSC-044, ¶¶ 8-9, 117 N.M. 461, 872 P.2d 879. With the narrow basis for general personal jurisdiction, specific personal jurisdiction has become the primary means of ensuring that a nonresident defendant remains answerable for the damages it causes in a state.

**{2}**    In this extraordinary writ proceeding, we consider a theory of specific personal jurisdiction premised on a defendant's participation in a civil conspiracy. For ease of reference, we refer to this theory as "conspiracy jurisdiction." Conspiracy jurisdiction permits a state to exercise specific personal jurisdiction over a nonresident defendant who participates in a civil conspiracy if the acts that the defendant's co-conspirators take in furtherance of the civil conspiracy create minimum contacts with the state. In *Santa Fe Technologies v. Argus Networks, Inc.*, our Court of Appeals held that conspiracy jurisdiction is constitutionally permissible and may serve as a basis for asserting specific personal jurisdiction in New Mexico. 2002-NMCA-030, ¶¶ 31-39, 131 N.M. 772, 42 P.3d 1221. We now consider three petitions for writ of prohibition challenging that holding.

**{3}**    The petitioners here—Shook, Hardy & Bacon LLP (Shook), Covington & Burling LLP (Covington), and Womble Bond Dickinson (US) LLP (Womble) (collectively, the Law Firms)—are alleged to have conspired with cigarette manufacturers and other

tobacco industry organizations to defraud the public about the dangers of cigarette smoking. In two underlying lawsuits, the First Judicial District Court cited *Santa Fe Technologies* and asserted jurisdiction over the Law Firms on the basis of their involvement in the alleged civil conspiracy. The Law Firms now ask us to disavow conspiracy jurisdiction, arguing that it violates due process. The Law Firms further argue that, even if conspiracy jurisdiction satisfies due process, Plaintiffs in the underlying lawsuits (Real Parties in Interest here) have not made a prima facie case of conspiracy jurisdiction. The Law Firms thus seek an extraordinary writ prohibiting the district court from asserting personal jurisdiction over them.

{4}     We conclude that conspiracy jurisdiction satisfies due process if tailored to focus on those aspects of the defendant's conduct that evidence the defendant's purposeful availment of the forum state through participation in the civil conspiracy. Specifically, we conclude that conspiracy jurisdiction satisfies due process if tailored to focus on the defendant's conduct in joining a civil conspiracy targeting the forum state. We confirm that specific personal jurisdiction may be exercised over a defendant who participates in a civil conspiracy that the defendant knows will include acts creating minimum contacts with our state. Applying this standard to the record of the underlying proceedings, we conclude that Plaintiffs have failed to show grounds for specific personal jurisdiction over the Law Firms. The Law Firms must be dismissed.

## II.     BACKGROUND

{5}     This proceeding has its origins in two lawsuits that Plaintiffs filed against cigarette manufacturer Philip Morris USA, Inc. (Philip Morris), the Law Firms, and several local cigarette retailers and distributors. *Sandoval v. Philip Morris USA, Inc.*, D-101-CV-2022-00794 (1st Jud. Dist. Ct. filed May 5, 2022); *Trujillo v. Philip Morris USA, Inc.*, D-101-CV-2022-00798 (1st Jud. Dist. Ct. filed May 5, 2022). Plaintiffs allege that the Law Firms conspired with Philip Morris and other tobacco industry organizations to misrepresent the dangers of cigarette smoking, leading to Plaintiffs' personal injuries. Only the Law Firms, Philip Morris, and the tobacco industry organizations are alleged to have participated in this conspiracy; Plaintiffs do not claim the local distributors and retailers took part.

{6}     Plaintiffs are all New Mexico residents. The Law Firms are all nonresidents: Shook is established in and principally operates out of Missouri; Covington is organized and primarily does business in the District of Columbia; and Womble is based in North Carolina. None of the Law Firms have significant ties, contacts, or relations in New Mexico. Plaintiffs concede that New Mexico lacks general personal jurisdiction over the Law Firms. Plaintiffs instead allege that specific personal jurisdiction is proper, in part, because the Law Firms joined with Philip Morris and other tobacco organizations in a nationwide civil conspiracy to commit fraudulent misrepresentation and that this nationwide civil conspiracy included New Mexico.

{7}     The Law Firms filed motions to dismiss for lack of personal jurisdiction, asserting that Plaintiffs could not show that they took any actions related to the suit that specifically occurred in or were aimed at New Mexico. The Law Firms also argued that

conspiracy jurisdiction is unconstitutional. Plaintiffs responded that jurisdiction is appropriate over the Law Firms under both conspiracy jurisdiction and traditional due process principles, and attached several hundred pages of exhibits in support of their responses.

**{8}**     Plaintiffs proffered the exhibits to show that the Law Firms served on the "Committee of Counsel," an association of lawyers representing cigarette manufacturers and tobacco industry organizations whose goal was to coordinate a public relations campaign to defraud the public about the adverse health impacts of smoking. The exhibits, which are not accompanied by an affidavit, appear to be documents pulled from publicly available online archives about the tobacco industry.[1] The exhibits mostly describe out-of-state conduct. But interspersed within the exhibits are a few references to New Mexico. For example, Plaintiffs attached a few tobacco advertisements and pamphlets distributed in New Mexico. Other exhibits include various letters and memoranda citing New Mexico laws or regulations, identifying smoking-related state court litigation, discussing studies conducted by New Mexico research institutions, or documenting campaign contributions to local officials. We discuss Plaintiffs' exhibits in more detail below.

**{9}**     The district court denied the Law Firms' motions to dismiss. The district court specifically cited *Santa Fe Technologies*, 2002-NMCA-030, as the basis for asserting personal jurisdiction over the Law Firms, explaining that Plaintiffs had shown that the Law Firms actively participated in a civil conspiracy that "reached into New Mexico." The district court also refused to certify the matter for interlocutory appeal. *See* NMSA 1978, § 39-3-4 (1999).

**{10}**     Each of the Law Firms separately petitioned this Court for a writ of prohibition to restrain the district court from exercising personal jurisdiction over them. We initially denied Covington's petition but later withdrew the order and consolidated the three petitions. After oral argument, we granted the petitions and issued an extraordinary writ instructing the district court to dismiss the Law Firms from the underlying lawsuits. We held that conspiracy jurisdiction is constitutional but determined that the district court lacked jurisdiction over the Law Firms on the record presented. We now write to explain our reasoning.

## III.     STANDARD FOR A PETITION FOR WRIT OF PROHIBITION

**{11}**     The Law Firms seek to invoke the Court's original jurisdiction in prohibition. N.M. Const. art. VI, § 3. The writ of prohibition is "an extraordinary writ, issued by a superior court to an inferior court to prevent the latter from exceeding its jurisdiction, either by prohibiting it from assuming jurisdiction in a matter over which it has no control, or from going beyond its legitimate powers in a matter of which it has jurisdiction." *State ex rel. Harvey v. Medler*, 1914-NMSC-055, ¶ 17, 19 N.M. 252, 142 P. 376. In assessing the propriety of a writ of prohibition, "this Court is concerned with whether the district court

---

[1]*See* Univ. of Cal. S.F., *Truth Tobacco Industry Documents*, https://www.industrydocuments.ucsf.edu/tobacco (last visited Apr. 2, 2025).

had jurisdiction over the subject matter of the dispute and over each of the parties to the dispute." *In re Extradition of Martinez*, 2001-NMSC-009, ¶ 7, 130 N.M. 144, 20 P.3d 126. The relevant question is "'not whether the court had a right to decide the issue in a particular way, but did it have the right to decide it at all.'" *Id.* (quoting *State ex rel. Kermac Nuclear Fuels Corp. v. Larrazolo*, 1962-NMSC-134, ¶ 23, 70 N.M. 475, 375 P.2d 118).

**{12}** A writ of prohibition "is never allowed to serve the purpose of appeal, writ of error, or certiorari, or any other process known to the common law by which the action of an inferior court may be reviewed." *Lincoln-Lucky & Lee Mining Co. v. Dist. Ct.*, 1894-NMSC-006, ¶ 14, 7 N.M. 486, 38 P. 580 (Freeman, J., dissenting); *accord State v. Valerio*, 2012-NMCA-022, ¶ 23, 273 P.3d 12 ("It is well established that the extraordinary writ of prohibition is generally available only in cases where there is no adequate remedy at law."). This Court may issue a writ of prohibition as a matter of "sound judicial discretion, to be granted or withheld according to the circumstances of each particular case, to be used with great caution for the furtherance of justice when none of the ordinary remedies provided by law are applicable." *Medler*, 1914-NMSC-055, ¶ 23.

**{13}** This is one of those extraordinary occasions in which we will consider a writ of prohibition based on an asserted lack of personal jurisdiction. The Law Firms' petitions present a novel question of law addressing a unique theory of specific personal jurisdiction. That question is of substantial public concern and implicates the Law Firms' fundamental due process rights. This Court first alluded to conspiracy as a basis for asserting personal jurisdiction in *Sanchez v. Church of Scientology of Orange Cnty.*, 1993-NMSC-034, ¶¶ 11-12, 115 N.M. 660, 857 P.2d 771, but had no occasion to consider whether to adopt the theory under the facts presented in that matter. Based partly on *Sanchez*, our Court of Appeals adopted conspiracy jurisdiction in 2002. *Santa Fe Techs.*, 2002-NMCA-030, ¶¶ 32, 34. This Court has not had an opportunity to review the theory since then. Judicial economy is promoted by considering the issues now rather than on any possible appeal. We, therefore, exercise our discretion to entertain the Law Firms' petitions due to the novelty and importance of the questions involved.

## IV. DISCUSSION

**{14}** The Law Firms advance two main arguments against the district court's assertion of personal jurisdiction: (1) conspiracy jurisdiction violates due process because it relies on contacts created by the unilateral conduct of a third party and not by the defendant itself, and (2) even if conspiracy jurisdiction does not violate due process, Plaintiffs have failed to show that jurisdiction may be exercised over them. We address each argument in turn.

**A.    Conspiracy Jurisdiction Satisfies Due Process**

**1.    Overview of personal jurisdiction requirements**

**{15}**    "The Due Process Clause of the Fourteenth Amendment [to the United States Constitution] limits the power of a state court to render a valid personal judgment against a nonresident defendant." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980); *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n.10 (1982) (explaining that personal jurisdiction limitations "must be seen as ultimately a function of the individual liberty interest preserved by the Due Process Clause"). Specifically, the Due Process Clause "does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations." *Int'l Shoe*, 326 U.S. at 319. Personal jurisdiction limitations also promote comity and federalism by "ensur[ing] that States with little legitimate interest in a suit do not encroach on States more affected by the controversy." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 360 (2021) (internal quotation marks and citation omitted).

**{16}**    Under the Due Process Clause, a state may exercise personal jurisdiction over a defendant if the defendant possesses "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The United States Supreme Court recognizes two types of personal jurisdiction, specific and general. *Chavez*, 2022-NMSC-006, ¶ 23. General personal jurisdiction extends to all claims against a defendant; specific personal jurisdiction extends only to claims arising out of or related to the defendant's contacts with the forum state. *Id.*; *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414 nn.8 & 9 (1984).

**{17}**    Conspiracy jurisdiction is a type of specific personal jurisdiction. *Santa Fe Techs.*, 2002-NMCA-030, ¶ 31. New Mexico courts may exercise specific personal jurisdiction over a nonresident defendant when (1) the defendant committed an act enumerated in our long-arm statute, NMSA 1978, § 38-1-16 (1971); (2) the plaintiff's cause of action arises from or relates to the defendant's acts; and (3) the defendant has minimum contacts with New Mexico necessary to satisfy due process. *Sanchez*, 1993-NMSC-034, ¶ 8. We have construed our long-arm statute as extending personal jurisdiction as far as constitutionally permissible, and thus, the first and third steps of this test "collapse[] into a single search for the outer limits of what due process permits." *Hiatt*, 1994-NMSC-044, ¶ 7 (internal quotation marks and citation omitted). While the overall inquiry into specific personal jurisdiction considers whether the defendant has sufficient minimum contacts with the forum state to render the exercise of jurisdiction fair, in practice, courts evaluating personal jurisdiction often separate the inquiry into a "contacts" prong and a "reasonableness" prong. *Daimler*, 571 U.S. at 144 (Sotomayor, J., concurring).

**{18}**    In analyzing the sufficiency of contacts with the forum state, we "focus[] on the relationship among the defendant, the forum, and the litigation." *Calder v. Jones*, 465

U.S. 783, 788 (1984) (internal quotation marks and citation omitted). To exercise specific personal jurisdiction over a nonresident defendant, the defendant must have sufficient contacts with a forum state such that it "should reasonably anticipate being haled into court there"; however, the foreseeability of litigation "has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *World-Wide Volkswagen*, 444 U.S. at 295, 297. Rather, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

**{19}**    We have explained, "the purposeful availment test of *Hanson* is the 'key focus' in analyzing minimum contacts questions." *Hiatt*, 1994-NMSC-044, ¶ 9 (emphasis omitted) (citation omitted). This "purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotation marks and citations omitted); *accord Hanson*, 357 U.S. at 253 ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."). The defendant's contacts with the forum state "must be the defendant's own choice and . . . show that the defendant deliberately reached out beyond its home—by, for example, exploiting a market in the forum State or entering a contractual relationship centered there." *Ford Motor*, 592 U.S. at 359 (brackets, internal quotation marks, and citation omitted).

**{20}**    Even if the party asserting jurisdiction meets its burden regarding the contacts prong, the exercise of personal jurisdiction must still be reasonable. *Burger King*, 471 U.S. at 476-78. "This determination is made by balancing five factors: the burden on the defendant, New Mexico's interest, the plaintiff's interest, the interest in an efficient judicial system, and the interest in promoting public policy." *Zavala v. El Paso Cnty. Hosp. Dist.*, 2007-NMCA-149, ¶ 12, 143 N.M. 36, 172 P.3d 173 (citing *Burger King*, 471 U.S. at 476-77). Of these factors, the burden on the defendant is of "primary" importance. *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 263 (2017).

## 2.    *Santa Fe Technologies* and conspiracy jurisdiction

**{21}**    In *Santa Fe Technologies*, our Court of Appeals held that specific personal jurisdiction could be exercised over a nonresident defendant on the basis of the defendant's participation in a civil conspiracy. 2002-NMCA-030, ¶¶ 31-36. The plaintiff in *Santa Fe Technologies* was a New Mexico corporation that had entered into an agreement with several nonresident defendants to pursue a bid on a federal government contract. *Id.* ¶¶ 4-5. The plaintiff alleged that the defendants later conspired to replace it with another corporation on the bid. *Id.* ¶¶ 9-11. The plaintiff sued under intentional tort theories, and the defendants moved to dismiss for lack of personal jurisdiction. *Id.* ¶ 11. The district court denied the motions to dismiss. *Id.*

**{22}**    On appeal, the Court of Appeals affirmed that personal jurisdiction was proper over the defendants who had either acted in New Mexico or who had sent agents to

New Mexico to act on their behalf. *Id.* ¶¶ 23, 27-29. However, one defendant, DeNino, had neither come to New Mexico nor sent an agent here. *Id.* ¶¶ 6, 8, 30, 37. Yet DeNino knew of and had agreed to the other defendants' in-state acts. *Id.* ¶¶ 6, 8, 37. The Court of Appeals, therefore, considered whether jurisdiction could be asserted over DeNino on the basis of his participation in a civil conspiracy with the other defendants. *Id.* ¶ 30.

{23}    The *Santa Fe Technologies* Court explained, "[p]ersonal jurisdiction based on conspiracy is premised on the concepts that jurisdictional contacts of one in-state conspirator may be imputed to a non-resident co-conspirator." *Id.* ¶ 31. The Court of Appeals acknowledged a split on the constitutionality of conspiracy jurisdiction, noting that some courts hold that it violates due process because it relies on contacts created by a co-conspirator rather than contacts created by the defendant itself. *Id.* ¶¶ 32-33. The Court of Appeals nevertheless adhered to precedent approving of an "appropriately limited" view of conspiracy jurisdiction. *Id.* ¶¶ 33-34. The Court reasoned that conspiracy jurisdiction satisfies due process because it "is based on the principles of agency," as under the substantive law of civil conspiracy, the actions of one co-conspirator may be attributed to the other co-conspirators. *Id.* ¶ 34. The Court of Appeals further reasoned that a defendant who voluntarily participated in a civil conspiracy with knowledge of its acts or effects in the forum state could be said to have purposefully availed itself of the privilege of conducting activities there. *Id.* ¶¶ 32, 34.

{24}    The *Santa Fe Technologies* Court explained that DeNino had participated in a civil conspiracy with the other defendants and had approved the other defendants' in-state efforts to remove the plaintiff from the bid. *Id.* ¶ 37. The Court reasoned that DeNino's "activities were directed toward New Mexico because he knew or should have known that [a co-conspirator], upon his agreement, would perform in New Mexico the actions in furtherance of the conspiracy of which he had approved." *Id.* ¶ 38. Because DeNino "gave his approval" to the tortious in-state acts, the Court of Appeals concluded "personal jurisdiction of the state's courts over DeNino as a co-conspirator . . . [was] sound." *Id.* ¶ 39.

**3.    Conspiracy jurisdiction satisfies due process if limited to focus on the defendant's conduct in joining a conspiracy targeting the forum state**

{25}    The Law Firms ask this Court to limit *Santa Fe Technologies* to the extent that the opinion adopts conspiracy jurisdiction as a basis to assert specific personal jurisdiction. The Law Firms argue that conspiracy jurisdiction contravenes due process because the theory relies on forum contacts unilaterally made by a third party instead of contacts made by the defendant itself. The Law Firms suggest that two recent United States Supreme Court opinions, *Walden v. Fiore*, 571 U.S. 277 (2014), and *Bristol-Myers*, 582 U.S. 255, demonstrate that conspiracy jurisdiction is incompatible with due process. Plaintiffs respond that neither *Walden* nor *Bristol-Myers* addressed conspiracy jurisdiction and that *Santa Fe Technologies* remains good law.

{26}    Plaintiffs correctly note that neither *Walden* nor *Bristol-Myers* addressed conspiracy jurisdiction; however, both opinions shed light on the validity of the theory by clarifying that specific personal jurisdiction may be exercised by the forum state only

when the claim-related contacts of the *defendant* are sufficient. In *Walden*, the Supreme Court considered whether Nevada courts could exercise jurisdiction over a nonresident defendant for claims arising from the defendant's seizure of the plaintiff's property in Georgia. 571 U.S. at 279. The defendant, a federal agent working at the Hartsfield-Jackson Atlanta International Airport, seized the plaintiffs' property during a flight layover. *Id.* at 280. The plaintiffs traveled home to Nevada and brought suit there for intentional tort. *Id.* at 281.

{27} The *Walden* Court held that jurisdiction was not properly exercised over the defendant in Nevada, explaining: "The proper focus of the 'minimum contacts' inquiry in intentional-tort cases is 'the relationship among the defendant, the forum, and the litigation.' And it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." *Id.* at 291 (internal quotation marks and citation omitted). The Court explained that Nevada lacked personal jurisdiction because all of the relevant conduct took place in Georgia; the fact that the defendant knew the plaintiffs would be injured in Nevada was insufficient to confer jurisdiction. *Id.* "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 290.

{28} In *Bristol-Myers*, a large group of plaintiffs, including residents and nonresidents, filed suit in California against a nonresident drug manufacturer for injuries allegedly sustained from a medication. 582 U.S. at 258. The California Supreme Court analyzed whether to assert jurisdiction over the manufacturer using a sliding scale approach, reasoning that the plaintiffs' claims could have less of a connection with the forum state when the defendant possessed extensive contacts with the state. *Id.* at 260. On review, the United States Supreme Court rejected this sliding-scale approach, affirming that specific personal jurisdiction extends only to claims connected to the defendant's contacts with the forum state. *Id.* at 263-64. "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.* at 264.

{29} The *Bristol-Myers* Court held that California could not exercise jurisdiction over the manufacturer because the nonresidents' claims were not connected to the state. *Id.* at 264-65. This lack of connection between the forum and the nonresident plaintiffs' claims defeated jurisdiction in spite of the fact that California could exercise jurisdiction over identical claims raised by the plaintiffs who were residents of the forum. *Id.* "As we have explained, a defendant's relationship with a third party, standing alone, is an insufficient basis for jurisdiction. This remains true even when third parties (here, the plaintiffs who reside in California) can bring claims similar to those brought by the nonresidents." *Id.* at 265 (ellipsis, internal quotation marks, and citation omitted).

{30} Neither *Walden* nor *Bristol-Myers* addressed the question presented here, namely, whether specific personal jurisdiction may be asserted over a nonresident defendant based on the defendant's participation in a civil conspiracy. However, both opinions emphasize that the defendant itself must make the relevant forum contacts and that the defendant's relationship with others, standing alone, is insufficient to confer jurisdiction. *Walden*, 571 U.S. at 291; *Bristol-Myers*, 582 U.S. at 264-65. Thus, *Walden*

and *Bristol-Myers* seemingly undermine conspiracy jurisdiction to the extent that the theory attributes contacts to a defendant based on its relationship with its co-conspirators. Indeed, several courts have rejected conspiracy jurisdiction because the theory arguably shifts the focus of the jurisdictional inquiry away from "the relationship among the defendant, the forum, and the litigation" and commingles the jurisdictional inquiry with the potential merits of a civil conspiracy claim. *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984) (internal quotation marks and citation omitted); *see, e.g.*, *Ashby v. State*, 779 N.W.2d 343, 361 (Neb. 2010) ("The difficulty with establishing personal jurisdiction based on an alleged conspiracy is that it merges the jurisdiction issue with the merits of the case."); *Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 773 (Tex. 1995) ("Conspiracy as an independent basis for jurisdiction has been criticized as distracting from the ultimate due process inquiry: whether the out-of-state defendant's contact with the forum was such that it should reasonably anticipate being haled into a court in the forum state.").

**{31}** Yet *Walden* and *Bristol-Myers* do not foreclose conspiracy jurisdiction. And other jurisdictions have recognized that conspiracy jurisdiction is constitutionally permissible after *Walden* and *Bristol-Myers* because the law of civil conspiracy is closely related to principles of agency. *See, e.g.*, *Womble Bond Dickinson (US) LLP v. Kim*, 537 P.3d 1154, 1162 (Haw. 2023) ("*Walden* recognized that an agent's in-state acts operate as a 'relevant contact' for due process purposes. . . . While conspiracy and agency relationships are not exactly the same, they are closely related."); *Raser Techs., Inc. v. Morgan Stanley & Co., LLC*, 2019 UT 44, ¶ 79, 449 P.3d 150 ("[B]ecause a conspiracy is a type of agency relationship, an act taken during the course of a conspiracy relationship may lead to specific personal jurisdiction over a defendant."); *Tricarichi v. Coop. Rabobank, U.A.*, 440 P.3d 645, 652-53 (Nev. 2019) ("[B]ecause co-conspirators are deemed to be each other's agents, the contacts that one co-conspirator made with a forum while acting in furtherance of the conspiracy may be attributed for jurisdictional purposes to the other co-conspirators." (internal quotation marks and citation omitted)). And there are sound policy reasons for recognizing the theory, as a state has an interest in providing an accessible forum for plaintiffs to sue defendants for conduct that bears a substantial connection with the state. *Burger King*, 471 U.S. at 473.

**{32}** We accept this policy justification and agree with the underlying rationale that conspiracy jurisdiction is constitutionally sound because it is aligned with principles of agency. As noted by our Court of Appeals, under a claim for civil conspiracy, the acts of one co-conspirator in furtherance of the civil conspiracy become the acts of all co-conspirators. *Santa Fe Techs.*, 2002-NMCA-030, ¶ 34. Indeed, a substantive claim for civil conspiracy is not a separately actionable tort, *Armijo v. Nat'l Sur. Corp.*, 1954-NMSC-024, ¶¶ 28-29, 58 N.M. 166, 268 P.2d 339, but is instead a means "to impute liability to make members of the conspiracy jointly and severally liable for the torts of any of its members." *Ettenson v. Burke*, 2001-NMCA-003, ¶ 12, 130 N.M. 67, 17 P.3d 440. Accordingly, the acts that a co-conspirator takes in furtherance of a civil conspiracy "are not unilateral because conspiratorial acts have at their foundation an agreement and the involvement of other co-conspirators." *Santa Fe Techs.*, 2002-NMCA-030, ¶ 34.

**{33}** In this regard, conspiracy jurisdiction merely recognizes that a defendant can purposefully direct its activities towards a forum state by agreeing that a co-conspirator may perform acts targeted at the state in furtherance of their joint objective. Our long-arm statute permits a court to exercise specific personal jurisdiction based on the acts of an agent. *See* § 38-1-16(A) ("Any person, whether or not a citizen or resident of this state, who in person *or through an agent* does any of the acts enumerated in this subsection thereby submits himself or his personal representative to the jurisdiction of the courts of this state." (emphasis added)). And, despite emphasizing the importance of basing jurisdiction on a defendant's own conduct, *Walden* recognizes that a defendant may make relevant forum contacts through indirect or vicarious means, such as through the acts of an agent. 571 U.S. at 285. We agree that such vicariously created contacts encompass contacts created by a defendant's co-conspirator when acting in furtherance of a joint civil conspiracy.

**{34}** The Law Firms nevertheless contend that there is one crucial difference between an agent and a co-conspirator: control. The Law Firms reason "[a]gency relationships are premised on control," and thus "[i]t follows that in the jurisdictional context, an in-state agent's contacts are imputed to an out-of-state principal only when the principal controls the agent and consents to the agent's acts." We disagree.

**{35}** Under the substantive law of agency, the requirement of control is essential to a finding of respondeat superior liability. *See, e.g.*, Restatement (Third) of Agency § 1.01, at 17 (2005) ("Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and *subject to the principal's control*, and the agent manifests assent or otherwise consents so to act." (emphasis added)); UJI 13-402 NMRA (providing that for a principal to be liable for acts of its agent, the principal must have "had the right to control the manner in which the details of the work were to be performed at the time of the occurrence, even though the right of control may not have been exercised"). But all that due process requires for an assertion of specific personal jurisdiction is that the defendant "deliberately reached out" to the forum state, *Ford Motor*, 592 U.S. at 359 (internal quotation marks and citation omitted), such that it can be said to have fairly "invok[ed] the benefits and protections of its laws." *Hanson*, 357 U.S. at 253. We assess that a defendant can deliberately reach out to a forum state by participating in a civil conspiracy directed at the state even if the defendant does not control the details of its co-conspirator's acts for purposes of respondeat superior.

**{36}** The United States Supreme Court has previously held that an intentional tortfeasor may be held to account for out-of-state conduct that is aimed at and foreseeably causes injuries in a forum state. *Calder*, 465 U.S. at 788-91. This is true even if the intentional tortfeasor does not control the entities or instrumentalities that carry out the effects of the defendant's intentional conduct in the state. *Id.* at 789-90 (permitting jurisdiction over a defendant for an allegedly libelous article targeted at the forum state even though the defendant was not responsible for distributing the article in the forum state). A defendant's control over its co-conspirators is therefore irrelevant to the question of specific personal jurisdiction. *See Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*, 22 F.4th 103, 124-25 (2d Cir. 2021) (rejecting a

requirement of the defendant's direction, supervision, or control of a co-conspirator for conspiracy jurisdiction). Nevertheless, we discern that the purposeful availment requirement demands that a defendant have intentionally targeted the forum state for specific personal jurisdiction to apply. For jurisdiction to lie based on intentionally tortious conduct, the United States Supreme Court has emphasized that a "forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts *with the forum*." *Walden*, 571 U.S. at 286 (emphasis added). Due process requires that the defendant committed an intentional act that is directed at the forum state, not just at the plaintiff. *Calder*, 465 U.S. at 789-90.

**{37}** Thus, even though a defendant does not need to control its co-conspirator, we conclude that a defendant, in participating in a civil conspiracy, must have intentionally targeted the forum state for specific personal jurisdiction to apply. We concur with *Santa Fe Technologies* that a defendant's intent to target a forum state can be shown through the defendant's active participation in a civil conspiracy and knowledge that, on its agreement, a co-conspirator will perform acts in furtherance of the civil conspiracy that are targeted at the forum state. *Santa Fe Techs.*, 2002-NMCA-030, ¶¶ 32, 36. With this knowledge requirement, conspiracy jurisdiction focuses on the defendant's own conduct in knowingly joining a conspiracy targeted at the forum state and not merely on the defendant's relationship with its co-conspirators.

**{38}** We, therefore, endorse the following limited standard for evaluating an assertion of specific personal jurisdiction on the basis of the defendant's participation in a civil conspiracy. A plaintiff seeking to establish personal jurisdiction over a defendant on the basis of a civil conspiracy must allege with particularity or, on challenge, show that: (1) the defendant actively and voluntarily participated in a civil conspiracy, (2) the defendant knew of a co-conspirator's acts in furtherance of the civil conspiracy that occurred in or were aimed at New Mexico, and (3) these acts created minimum contacts with New Mexico such that the defendant could reasonably foresee being brought into court here. As with other exercises of specific personal jurisdiction, the plaintiff's claims must arise from or relate to the contacts imputed to the defendant on the basis of its participation in the civil conspiracy. *Ford Motor*, 592 U.S. at 361-62. The defendant's contacts must also "be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *Burger King*, 471 U.S. at 476 (internal quotation marks and citation omitted).

### 4. We limit *Santa Fe Technologies* to the extent it conflicts with our holding

**{39}** We thus agree with *Santa Fe Technologies* that conspiracy jurisdiction satisfies due process. 2002-NMCA-030, ¶ 36. We also agree that the facts of *Santa Fe Technologies* supported an assertion of conspiracy jurisdiction over the nonresident defendant in that case. In *Santa Fe Technologies*, DeNino knew that his co-conspirators, on his agreement, would take tortious actions in New Mexico, which foreseeably caused injuries here. *Id.* ¶¶ 8, 44. DeNino was, therefore, properly brought into our courts based on his conduct in participating in a civil conspiracy that he knew would involve acts creating minimum contacts with our state. *Id.* ¶¶ 37-39.

**{40}**     Although we approve of the result in *Santa Fe Technologies*, we nevertheless must correct and limit that opinion to the extent that its analysis of conspiracy jurisdiction conflicts with our own.

**{41}**     First, we disapprove of *Santa Fe Technologies*' suggestion that a defendant's knowledge of a conspiracy's *effects* in a forum state is sufficient to satisfy due process. *Id.* ¶¶ 32, 34. It is not enough that a defendant anticipated that a civil conspiracy would have effects in the forum state. *Walden*, 571 U.S. at 286. Rather, the defendant's conduct in participating in the civil conspiracy must demonstrate an intent to target the forum, which may be shown by the defendant's knowledge of conspiratorial acts directed towards the forum state.

**{42}**     Second, *Santa Fe Technologies* improperly injected an objective knowledge inquiry into the analysis of conspiracy jurisdiction. The Court of Appeals stated, "DeNino's activities were directed toward New Mexico because he knew *or should have known* that [a co-conspirator], upon his agreement, would perform in New Mexico the actions in furtherance of the conspiracy of which he had approved." *Santa Fe Techs.*, 2002-NMCA-030, ¶ 38 (emphasis added). Due process demands that a defendant purposefully direct its activities at a forum, *Hanson*, 357 U.S. at 253, so the defendant must actually know about a co-conspirator's in-state or forum-targeted acts. We, therefore, limit *Santa Fe Technologies* to the extent it suggests that personal jurisdiction may be exercised over a defendant who "should have known" of a co-conspirator's acts in or aimed at our state. As we have explained, conspiracy jurisdiction will lie only when the defendant has actual knowledge of the relevant conspiratorial acts.

**{43}**     Third, we clarify that conspiracy jurisdiction does not require the in-state presence of a co-conspirator. In *Santa Fe Technologies*, our Court of Appeals suggested that a co-conspirator must have a "physical, in-state presence," or have committed acts inside the state for conspiracy jurisdiction to apply. 2002-NMCA-030, ¶¶ 32, 36. Other jurisdictions have similarly required that a plaintiff show that the defendant knew of the acts a co-conspirator took inside the state. *See EIG Energy Fund XIV, L.P. v. Petróleo Brasileiro, S.A.*, 246 F. Supp. 3d 52, 91 (D.D.C. 2017) ("[F]ollowing *Walden*, a plaintiff who seeks to establish jurisdiction over a defendant based on a co-conspirator's contacts must plead, at a minimum, that the defendant knew his co-conspirator was carrying out acts in furtherance of the conspiracy in the forum." (emphasis omitted)); *Kim*, 537 P.3d at 1163 (adopting conspiracy jurisdiction with a standard requiring the plaintiff to show that "the defendant knew of the co-conspirator's acts in the forum"). However, *Calder* recognizes that a defendant may be subject to jurisdiction for out-of-state conduct intentionally aimed at a forum state. *Calder*, 465 U.S. at 789. Thus, we disagree that a co-conspirator's in-state presence is required. A defendant can be subjected to personal jurisdiction based on its knowledge of a co-conspirator's acts expressly aimed at a forum state, as well as a co-conspirator's acts occurring in the forum state. We, therefore, limit *Santa Fe Technologies* to the extent that the opinion may have required an in-state co-conspirator.

**B.      The District Court Lacks Jurisdiction Over the Law Firms**

**{44}**    We now consider whether jurisdiction may be exercised over the Law Firms in the two civil lawsuits underlying this writ proceeding. The Law Firms argue that the district court exceeded its jurisdiction in denying each of their motions to dismiss Plaintiffs' lawsuits. The district court concluded that Plaintiffs had shown a civil conspiracy that "reached into New Mexico" but did not make any specific findings of fact. In the absence of any specific findings, we review the record de novo to determine whether Plaintiffs have shown personal jurisdiction over the Law Firms. *Tercero v. Roman Cath. Diocese of Norwich*, 2002-NMSC-018, ¶ 5, 132 N.M. 312, 48 P.3d 50.

**{45}**    Because no evidentiary hearing was held in the underlying suits, Plaintiffs bear the burden to make a prima facie showing that jurisdiction may be properly exercised over the Law Firms. *Doe v. Roman Cath. Diocese of Boise, Inc.*, 1996-NMCA-057, ¶ 9, 121 N.M. 738, 918 P.2d 17. With respect to conspiracy jurisdiction, a "prima facie showing consists of specific facts that, if proven, would allow a factfinder to find the existence of a conspiracy" that the defendant knew involved acts occurring in or directly aimed at our state. *Santa Fe Techs.*, 2002-NMCA-030, ¶ 41. "Mere allegations are not sufficient, but all factual disputes are resolved in [the plaintiff's] favor." *Id.* (citation omitted). Notwithstanding the holding today and its procedural posture, we acknowledge that a plaintiff's burden of showing a prima facie case of conspiracy jurisdiction may not be best suited in all cases for a decision by the court on a motion to dismiss. It might require, in most circumstances, jurisdiction discovery so the court can properly apply the test set forth in this opinion, and the parties have the opportunity to gather the facts necessary to advance their arguments.

**{46}**    A civil conspiracy is "a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Las Luminarias of the N.M. Council of the Blind v. Isengard*, 1978-NMCA-117, ¶ 5, 92 N.M. 297, 587 P.2d 444. A claim for "civil conspiracy unlike criminal conspiracy, is not of itself actionable; the gist of the action is the damage arising from the acts done pursuant to the conspiracy." *Armijo*, 1954-NMSC-024, ¶ 28. Thus, "[w]ithout an actionable civil case against one of the conspirators, . . . an agreement, no matter how conspiratorial in nature, is not a separate, actionable offense." *Ettenson*, 2001-NMCA-003, ¶ 12.

**{47}**    Plaintiffs allege that the Law Firms conspired with Philip Morris and other tobacco industry organizations to commit fraudulent misrepresentation. Plaintiffs describe a civil conspiracy starting in the early 1950s wherein Philip Morris and other tobacco industry organizations combined together to engage in a public relations campaign designed to downplay and create controversy about growing scientific research into the adverse health effects of smoking. Plaintiffs' complaints describe the acts of tobacco industry executives in some detail. However, Plaintiffs' allegations against the Law Firms are not supported by particularized facts.

**{48}**    Instead, Plaintiffs broadly allege that the Law Firms participated in the civil conspiracy by screening and directing scientific studies favorable to the tobacco industry, carrying out document destruction policies protecting tobacco organizations,

sheltering behind baseless assertions of attorney-client privilege, overseeing public positions and statements, clearing advertisements, providing false and misleading testimony and submissions to governmental agencies, and hiding the source of money for special projects. Plaintiffs proffer that, as members of the Committee of Counsel, the Law Firms served as the "supreme authority" of the alleged conspiracy and set the "high policy of the industry on *all* smoking and health matters." But, in the absence of specific allegations of fact showing the Law Firms' conduct, Plaintiffs have failed to prima facie show the Law Firms' active participation in a civil conspiracy to fraudulently misrepresent the health effects of tobacco use.

{49}    Plaintiffs have also failed to demonstrate the Law Firms knew of acts in furtherance of the alleged civil conspiracy, which create minimum contacts with our state. In an effort to demonstrate a connection between the alleged civil conspiracy and New Mexico, Plaintiffs submitted hundreds of pages of exhibits, including a few advertisements published in New Mexico promoting filtered or low-tar cigarettes, the transcript of a national television interview of a Philip Morris executive that aired in New Mexico, a "Tobacco Facts" pamphlet distributed by the New Mexico Tobacco & Candy Distributors organization, and a list of tobacco industry members in the region. Plaintiffs, in particular, suggest that the publication of a full-page advertisement titled *A Frank Statement to Cigarette Smokers* in the *Albuquerque Journal* on January 4, 1954, "was the first of many messages to the New Mexican public intended to create doubt about whether smoking is linked to disease or death."

{50}    While these exhibits show that the alleged conspiracy reached into New Mexico, none of these exhibits mention the Law Firms. Nor do the exhibits show that the Law Firms knew of any co-conspirator's acts in or aimed at New Mexico. Plaintiffs broadly allege that the Law Firms, as members of the Committee of Counsel, "vetted" documents such as these exhibits. But the referenced exhibits do not substantiate these allegations. And Plaintiffs' mere allegations are insufficient to demonstrate the Law Firms' participation and knowledge in a conspiracy targeting our state.

{51}    As additional support for an assertion of jurisdiction, Plaintiffs proffer several exhibits that can fairly be described as the Law Firms' attorney work product. Some of these documents mention New Mexico alongside numerous other states. For example, Plaintiffs submitted a report distributed by Shook on regulatory developments relating to cigarette smoking, including developments in New Mexico. Similarly, Plaintiffs identify several documents prepared by Womble that mention New Mexico, including an "R&D Weekly Highlights" memo which mentions a Santa Fe study on burn rate control, a memo noting another New Mexico study on tobacco effects on a small Hispanic population, an agenda for a meeting held in Womble's offices which briefly mentions New Mexico, and a memo listing New Mexico as a state with employment discrimination laws related to smoking. Other exhibits include the minutes from a Tobacco Institute meeting showing that a Covington attorney attended the meeting. The agenda for the meeting lists a smoking restriction initiative in Los Alamos, New Mexico. And yet another exhibit from Covington includes a legislative summary that referenced proposed indoor smoking ordinances in Carlsbad and Mesilla, New Mexico.

**{52}** When viewed in Plaintiffs' favor, these attorney work product documents suggest that the Law Firms participated in discussions with their clients about state laws and regulations or studies occurring in New Mexico. However, these documents do not reveal an agreement to defraud between the Law Firms and their clients. The documents also do not mention any actions in furtherance of the alleged civil conspiracy that occurred in or were aimed at New Mexico. Nor do these documents reveal the Law Firms' knowledge of any in-state or forum-targeted conspiratorial acts.

**{53}** In the absence of this targeted conduct, we cannot attribute any forum contacts to the Law Firms from these documents. Simply "[r]epresenting a client is not enough." *Kim*, 537 P.3d at 1165-66. Due process demands that Plaintiffs show the Law Firms participated in some act purposefully directed towards New Mexico. *Hiatt*, 1994-NMSC-044, ¶¶ 8-9. The Law Firms are not subject to our courts' jurisdiction simply because they may have advised their clients about our state's laws and regulations or kept track of scientific studies being conducted in our state.

**{54}** Plaintiffs also proffered a few exhibits that mention the Law Firms and acts occurring in or aimed at New Mexico. But even these exhibits fail to show that the Law Firms knew of overt acts in furtherance of the alleged civil conspiracy such that they could reasonably foresee being haled into court here. For example, Plaintiffs suggest that one exhibit shows that Covington advised a client regarding New Mexico lobbying laws, while another exhibit later indicates that an alleged co-conspirator made campaign contributions to New Mexico regulators. Another exhibit shows that Covington retained local counsel for a New Mexico resident's smoking-related lawsuit against her employer and monitored the progress of the litigation. Viewing these exhibits in Plaintiffs' favor, these documents suggest that Covington was aware of some actions that an alleged co-conspirator may have taken in New Mexico and perhaps directly participated in another forum-related act. But these few exhibits are isolated among the hundreds of pages proffered against Covington, and personal jurisdiction cannot be based on "random, isolated, or fortuitous" contacts. *Keeton*, 465 U.S. at 774. These exhibits simply do not connect the alleged conspiracy with New Mexico in a meaningful way. *See Walden*, 571 U.S. at 290 ("The proper question is . . . whether the defendant's conduct connects him to the forum in a meaningful way.").

**{55}** Similarly, Plaintiffs proffered several documents about a grant application for a research study at the University of New Mexico Hospital and a letter addressed to a Shook lawyer commenting on the grant application. Plaintiffs also submitted a letter written by a New Mexico resident quoting a Shook lawyer's advice about not putting anything in writing. Viewing these exhibits in Plaintiffs' favor, these documents suggest that Shook knew that a tobacco industry organization vetted and sponsored a scientific study in New Mexico and that a Shook lawyer spoke with a New Mexico resident. But these isolated acts do not demonstrate a substantial connection between the alleged conspiracy and New Mexico such that Shook could reasonably foresee being brought into court here.

**{56}** In sum, Plaintiffs' allegations and exhibits do not show that the Law Firms participated in a civil conspiracy to commit fraudulent misrepresentation or that the Law

Firms knew of acts in furtherance of this alleged civil conspiracy creating minimum contacts with this state. The record, therefore, does not support a prima facie case of personal jurisdiction over the Law Firms on the basis of civil conspiracy. Additionally, even though the district court did not consider whether jurisdiction was appropriate under a traditional analysis, on de novo review, we determine that Plaintiffs' allegations and exhibits do not support any traditionally recognized basis for asserting personal jurisdiction over the Law Firms. Therefore, Plaintiffs have not established that the Law Firms had "minimum contacts" with New Mexico "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316 (internal quotation marks and citation omitted). We do not reach the reasonableness prong of the due process analysis, *Burger King*, 471 U.S. at 476-77, because the minimum contacts prong is not satisfied and the parties have not briefed the issue.

**{57}** A writ of prohibition is warranted. Thus, in the interests of justice, we previously ordered the district court to dismiss the Law Firms from the underlying suits.

## V. CONCLUSION

**{58}** We hold that conspiracy jurisdiction comports with due process if properly limited to focus on the defendant's conduct in actively participating in a civil conspiracy that the defendant knows will target a forum state. We endorse conspiracy jurisdiction under the limited standard articulated herein. We additionally limit *Santa Fe Technologies* as discussed in this opinion. On review of the record, we determine that Plaintiffs have not shown that specific personal jurisdiction may be properly exercised over the Law Firms. We, therefore, direct that the Law Firms be dismissed.

**{59} IT IS SO ORDERED.**

**MICHAEL E. VIGIL, Justice**

**WE CONCUR:**

**DAVID K. THOMSON, Chief Justice**

**C. SHANNON BACON, Justice**

**JULIE J. VARGAS, Justice**

**BRIANA H. ZAMORA, Justice**